UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

BRIAN KOLFAGE,
STEPHEN BANNON,
ANDREW BADOLATO, and
TIMOTHY SHEA

Defendants.

20 Cr. 412 (AT)

~~FILED UNDER SEAL~~

---

**NON-PARTIES' REPLY IN FURTHER SUPPORT OF MOTION TO MODIFY
SEALED POST-INDICTMENT RESTRAINING ORDER, OR FOR
DISCLOSURE AND A HEARING**

JUSTIN S. WEDDLE
JULIA I. CATANIA
WEDDLE LAW PLLC
250 W. 55th St., Fl. 30
New York, NY 10019
212-997-5518
jweddle@weddlelaw.com

*Counsel for Kris Kobach*

KRIS KOBACH (*pro hac vice* to be submitted)
KOBACH LAW LLC
P.O. Box 155
Lecompton, KS 66050
kkobach@gmail.com

*General Counsel for We Build the
Wall, Inc.*

November 2, 2020

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................ 3

I.   THE APPLICABLE STATUTES DO NOT AUTHORIZE PRETRIAL RESTRAINT ................. 3

II.  CRIMINAL FORFEITURE PROCEEDINGS AGAINST THE DEFENDANTS CANNOT BE USED
     TO FORFEIT FUNDS NEVER OBTAINED BY THE DEFENDANTS .................................... 6

III. EVEN THE GOVERNMENT'S CASES RECOGNIZE THAT DUE PROCESS DEMANDS A
     HEARING ON RESTRAINED PROPERTY ....................................................................... 8

IV.  SECTION 853(K) IS INAPPLICABLE ............................................................................ 11

V.   THE GOVERNMENT'S EXTRA-JUDICIAL ATTEMPTS TO RESTRAIN PROPERTY BY FIAT
     ARE UNCONSTITUTIONAL .......................................................................................... 13

CONCLUSION ........................................................................................................ 15

TABLE OF AUTHORITIES

## Cases

*De Almeida v. United States,*
  459 F.3d 377 (2d Cir. 2006) ...................................................................... 2, 13

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002) ............................................................................................ 12

*DSI Associates LLC v. United States,*
  496 F.3d 175 (2d Cir. 2007) ............................................................................ 3

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
  527 U.S. 308 (1999) .......................................................................................... 6

*Honeycutt v. United States,*
  137 S. Ct. 1626 (2017) ..................................................................................... 6

*Kaley v. United States,*
  571 U.S. 320 (2014) ................................................................................... 2, 10

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) .......................................................................................... 8

*United States v. Bermudez,*
  413 F.3d 304 (2d Cir. 2005) ............................................................................ 7

*United States v. Bissell,*
  866 F.2d 1343 (11th Cir. 1989) ..................................................................... 9

*United States v. Capoccia,*
  2011 WL 1930677 (D. Vt. May 19, 2011) ................................................... 6

*United States v. Contorinis,*
  692 F.3d 136 (2d Cir. 2012) ............................................................................ 7

*United States v. Cosme,*
  796 F.3d 226 (2d Cir. 2015) .......................................................................... 13

*United States v. Dupree,*
  781 F. Supp. 2d 115 (E.D.N.Y. 2011) ......................................................... 6

*United States v. E-Gold, Ltd.,*
  521 F.3d 411 (D.C. Cir. 2008) ........................................................................ 8

*United States v. Holy Land Foundation,*
  493 F.3d 469 (5th Cir. 2007) ......................................................................... 8

*United States v. LaVilla,*
  553 F. App'x 45 (2d Cir. Jan. 29, 2014) .................................................... 6

*United States v. Mann,*
  140 F. Supp. 3d 513 (E.D.N.C. 2015) ........................................................................ 6
*United States v. Monsanto,*
  924 F.2d 1186 (2d Cir. 1991) ..................................................................... 8, 9, 10
*United States v. Razmilovic,*
  419 F.3d 134 (2d Cir. 2005) ........................................................................ 5
*United States v. Schlotzhauer,*
  2008 WL 320717 (W.D. Mo. Feb. 4, 2008) ............................................... 6
*United States v. Watts,*
  786 F.3d 152 (2d Cir. 2015) ........................................................................ 3

**Statutes**

18 U.S.C. § 981 ............................................................................................ 4
18 U.S.C. § 982 ............................................................................................ 4
21 U.S.C. § 853(a) ....................................................................................... 4
21 U.S.C. § 853(e) ....................................................................................... 7
21 U.S.C. § 853(k) ............................................................................ 2, 11, 12
28 U.S.C. § 2461(c) ..................................................................................... 5

**Rules**

Fed. R. Crim. P. 41(g) ............................................................................... 12

Non-parties, We Build the Wall, Inc., and Kris Kobach, both in his individual and representative capacity, submit this reply in further support of their Motion (i) to modify the Sealed Post-Indictment Restraining Order (the "Order"); or (ii) for disclosure to the movants of the portions of the government's sealed application and affidavit upon which the Court relied in issuing the Order restraining We Build the Wall's funds, and (iii) for a hearing on whether the Order should be modified.

The non-parties' motion explained in detail that the Court's Order restrained funds that, as a matter of law, cannot be the proceeds of the fraud charged in the Indictment. The gravamen of the Indictment is that the defendants defrauded donors by representing that Mr. Kolfage would not be compensated for his work on behalf of We Build the Wall, but then diverted money from We Build the Wall to compensate Mr. Kolfage (and other defendants). As the Indictment acknowledges, We Build the Wall's website was updated on or about January 1, 2020, to disclose that Mr. Kolfage would be compensated. That disclosure ended any purported fraud on the donor community regarding Mr. Kolfage's compensation. Thus, donations received well after that date—i.e., the approximately $1.6 million received on or after February 1, 2020—logically and legally have no nexus to the fraud and are not subject to forfeiture. Those funds should therefore be released so that We Build the Wall can pursue its mission, including ongoing efforts to (a) transfer title of the constructed section of wall in Sunland Park, New Mexico, to the Department of Homeland Security; (b) build a third section of wall in a location selected from a list published by the Department of Homeland Security; (c) pay existing invoices for services rendered in pursuit of the mission;

and (d) pay expenses occasioned by the legal issues related to the government's indictment.

The Motion also explained the legal context in which it arises, including the Fifth Amendment's guarantee that "[n]o person shall . . . be deprived of property without due process of law." (Motion at 12-13). The Motion explained that, according to the Supreme Court, the grand jury's determination that there is probable cause to believe the defendants committed the charged crimes is conclusive on that issue, but that that finding is necessary, but not sufficient, to restrain assets because there must also be probable cause to believe "that the property at issue has the requisite connection to that crime." (Motion at 14-15 (analyzing and quoting *Kaley v. United States*, 571 U.S. 320, 323-24 (2014))). As the Motion argued (and as the government concedes (Opposition at 11)), the grand jury made no finding regarding this requirement for restraint—the purported "probable cause" needed to connect the property at issue to the charged crime was based on an *ex parte*, sealed application and affidavit.

The Motion explained that Title 21, United States Code, Section 853(k) , does not apply here because the movants are not seeking to intervene to assert an interest in property "subject to forfeiture," they are seeking due process to protect property that is legally and logically unconnected to the purported fraud—i.e., property that is not "subject to forfeiture." (Motion at 18 n.5). The Motion also explained that the Second Circuit cases invoking Section 853(k) all involved post-conviction forfeiture orders, one of them discussed Section 853(k) in dicta (*De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006)), in another (*DSI Associates LLC v. United States*, 496

2

F.3d 175, 183-84 (2d Cir. 2007)), the claimant conceded that Section 853(k) barred intervention, and a third (*United States v. Watts*, 786 F.3d 152, 175 (2d Cir. 2015)) simply cited the first two.

In response, the government's opposition unabashedly embraces its extrajudicial and unilateral efforts to restrain assets by fiat by threatening criminal investigation or prosecution (Opposition at 14), and claims that any such extra-judicial threats are beyond the Court's purview and should be "disregarded" (Opposition at 3). The opposition further argues that there is no due process, statutory, or rule-based right for a non-defendant to challenge an *ex parte* and sealed restraint of the *non-defendant's* bank accounts; in the government's view, only a defendant can challenge such a restraint. (Opposition at 8-9). The government's position is inconsistent with controlling Supreme Court and Second Circuit case law, as well as the demands of the Constitution and the applicable statutes. The motion should be granted.

## ARGUMENT

## I.   THE APPLICABLE STATUTES DO NOT AUTHORIZE PRETRIAL RESTRAINT

As the Motion anticipated it would, the government invokes Section 853 and claims that it permits the *ex parte*, no hearing, restraint the government posits, and that it bars the Motion. Section 853 does neither.

It is helpful to start with the text of the applicable statutes. Title 21, United States Code, Section 853 does not directly apply to this case at all, since Section 853 is part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. 91-513, Title II, Section 413, and by its terms permits an order of forfeiture to be

entered against "[a]ny person convicted of a violation of this subchapter [relating to illegal distribution of narcotics] or subchapter II [relating to illegal import and export of narcotics]." 21 U.S.C. § 853(a). Since this is not a drug prosecution, Section 853 is only relevant—if at all—through the interaction of other forfeiture statutes.

Simple wire fraud (the crime charged here) is only referenced as a predicate crime for *civil* forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C); it is not among the crimes listed in the criminal forfeiture statutes at all. *See* 18 U.S.C. § 982 ("Criminal Forfeiture"; not including wire fraud unless certain specific characteristics (not present here) are also involved); 18 U.S.C. § 1963 (criminal forfeiture relating to RICO crimes); 21 U.S.C. § 853 (criminal forfeiture relating to narcotics crimes). While section 982 (the criminal forfeiture statute) cross-references Title 21, United States Code, Section 853, *see* 18 U.S.C. § 982(b), the civil forfeiture statute does not.[1]

Thus, the only mechanism for bringing a criminal forfeiture action for simple wire fraud is through a "catch-all" provision enacted as part of the Civil Asset Forfeiture Reform Act of 2000. That provision, as amended in 2006, appears in Title 28, United States Code, Section 2461(c), and provides that whenever civil forfeiture is authorized, a criminal forfeiture action may also be pursued against a criminal defendant:

---

[1] While the Indictment also charges money laundering, which is a predicate crime for criminal forfeiture, *see* 18 U.S.C. § 982(a)(1), the funds in We Build the Wall's accounts are necessarily and logically *not* funds involved in the laundering of diverted funds—they have never been diverted at all. Thus, as to We Build the Wall's funds, the Order logically cannot rest on the money laundering charge, and the government makes no claim that it does.

4

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

28 U.S.C. § 2461(c).[2] It is far from clear, however, that this provision (or its cross-reference to the Controlled Substances Act), permits *any pre-conviction restraint of assets*, let alone the *ex parte* restraint of a non-defendant's assets with no opportunity for the owner of those assets to challenge in a hearing the nexus between the property and the charged crime.

The Second Circuit has held that the pre-2006 version of this statute did not authorize the pretrial restraint of assets alleged to be the proceeds of wire fraud *at all. United States v. Razmilovic*, 419 F.3d 134, 136-37 (2d Cir. 2005).[3] The Court stated: "The distinction between forfeiture and pretrial restraint is no technical play on words. Pretrial restraint is a severe remedy independent of a right to damages or

---

[2] Although Section 2461(c) is cited in the Indictment as a basis for "forfeiture," it is not cited in the Order as a statutory basis for the Order's "restraint" of property. We are not privy to whether Section 2461(c) was cited in the government's sealed, *ex parte* application, or if that application cited or explained the import of the Second Circuit's decision in *United States v. Razmilovic*, 419 F.3d 134, 136-37 (2d Cir. 2005).

[3] Prior to amendment, Section 2461(c) provided: "If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in [21 U.S.C. § 853], other than subsection (d) of that section."

property following a finding of liability. Indeed, the Supreme Court has dubbed pre-trial restraint as a "'nuclear weapon' of the law.'" *Id.* at 137 (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 332 (1999)). Thus, even though Section 2461(c) cross-references the procedures of Section 853 (upon which the government here relies), the Second Circuit held that Section 2461(c)'s authori-zation of "criminal forfeiture" whenever "civil forfeiture" is authorized does *not* mean that "pretrial restraint" is authorized. Some lower courts have read the 2006 amend-ments to this subsection as undermining the *Razmilovic* analysis, *see United States v. Mann,* 140 F. Supp. 3d 513, 527 (E.D.N.C. 2015); *United States v. Capoccia,* 2011 WL 1930677, at *5 (D. Vt. May 19, 2011); *United States v. Dupree,* 781 F. Supp. 2d 115, 129-30 (E.D.N.Y. 2011); *United States v. Schlotzhauer,* 2008 WL 320717, at *8-9 (W.D. Mo. Feb. 4, 2008) (dicta, because the case did not involve criminal forfeiture under Section 2461(c)), but the Second Circuit declined to decide whether *Razmilovic* remains applicable. *United States v. LaVilla,* 553 F. App'x 45, 46 n.1 (2d Cir. Jan. 29, 2014). Thus, if *Razmilovic* remains the law of the Circuit, no pretrial restraint is per-mitted at all.

## II. CRIMINAL FORFEITURE PROCEEDINGS AGAINST THE DEFENDANTS CANNOT BE USED TO FORFEIT FUNDS NEVER OBTAINED BY THE DEFENDANTS

As the government acknowledges, the Supreme Court has held that a defend-ant may not be ordered to forfeit property that he himself did not acquire, yet it claims that this holding has "no relevance." (Opposition at 12 (citing *Honeycutt v. United States,* 137 S. Ct. 1626 (2017))). On the contrary, it demonstrates that the govern-ment's attempt to use a case against defendants to restrain and forfeit We Build the

Wall's property (never acquired by any defendant) is invalid. As the Second Circuit explained, "Forfeiture in criminal proceedings under 18 U.S.C. § 981 is an *in personam* proceeding. The forfeiture serves no remedial purpose, is designed to punish the offender, and *cannot be imposed upon innocent owners*." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) (emphasis added). "Thus, the calculation of a forfeiture amount in criminal cases is usually based on the defendant's actual gain. . . . District courts in our circuit have echoed this view by concluding that 'a defendant may be ordered to forfeit all monies received *by him* as a result of the fraud." *Id.* at 147 (emphasis in original). In the context of this criminal case, therefore, the defendants cannot be ordered to forfeit money that was not received by them and instead was donated to We Build the Wall and that remains in the possession of We Build the Wall. Likewise, We Build the Wall is not a guarantor for any monetary sanction or restitution order that may be imposed on any defendant based on the alleged diversion of funds from We Build the Wall. Thus, because there can be no forfeiture, there can be no pretrial restraint of We Build the Wall's funds. *See* 21 U.S.C. § 853(e) (authorizing protective orders and temporary restraining orders to "preserve the availability of property" subject to forfeiture "under this section"—i.e., the proceeds of narcotics offenses under subchapter I and II of Chapter 13 of Title 21); *cf. United States v. Bermudez*, 413 F.3d 304, 306 (2d Cir. 2005) (interpreting Section 853's references to Section 853(a)'s definition of forfeitable property to instead cross-reference Section

982(a)(1)'s definition, where the crime at issue was not a drug crime but instead was a money laundering offense subject to Section 982).[4]

### III. EVEN THE GOVERNMENT'S CASES RECOGNIZE THAT DUE PROCESS DEMANDS A HEARING ON RESTRAINED PROPERTY

In support of its view that We Build the Wall's funds can be restrained—*ex parte* and without a hearing—in a case against the defendants, the government skips over the civil forfeiture statute and cites directly to Section 853(a)(1)(A) and a number of cases, but most of those cases *conducted a constitutional due process analysis* to determine whether a hearing was required. *United States v. Monsanto*, 924 F.2d 1186, 1193-98 (2d Cir. 1991) (en banc) (analyzing due process requirements using *Mathews v. Eldridge*, 424 U.S. 319 (1976), factors and holding that a post-seizure, pre-trial hearing is required by the Fifth and Sixth Amendments); *United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008) (finding that *ex parte* initial seizure was permitted, given exigencies of the particular facts, but finding that *due process requires a hearing* to determine, pre-trial, the propriety of the initial seizure) (emphasis added); *United States v. Holy Land Foundation*, 493 F.3d 469, 475 (5th Cir. 2007) (en banc) (joining other circuits in relying on "the time-honored test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine when a hearing is required"; applying test

---

[4] It is difficult to see how *Bermudez* constitutes an interpretation of Section 853, rather than a re-writing of it, but given its controlling gloss in a related context, it appears that the Second Circuit would likely similarly interpret Section 853's references to "this section" to instead refer to definitions in Section 981 in the context of a Section 981 case. Thus, while not waiving the argument that Section 853 should be read according to its plain language (as permitting certain orders only in drug-related forfeitures), movants recognize that, to the extent *Bermudez* is applicable to the Section 981 context, this Court would be bound by *Bermudez*'s contrary reasoning.

8

to find that *no hearing was required for a claimant who is neither an owner of the property seized nor a defendant*) (emphasis added).[5]

These cases—most notably the controlling authority of the Second Circuit's *Monsanto* decision—demonstrate that, even if a pre-restraint hearing is not always required as a matter of due process (based on particular exigencies), due process requires a post-seizure hearing to *continue* a restraining order. *Monsanto*, 924 F.2d at 1193-98. Under the *Eldridge* factors, the movants have a due process right to be heard. First, We Build the Wall's interest in using its property in furtherance of its mission is strong—as noted in the Motion, the restraint has currently led to the administrative dissolution of the entity, at the same time that it is working to transfer a section of wall to the Department of Homeland Security. As also explained in the Motion, Mr. Kobach's interest is likewise fundamental and necessary to effect We Build the Wall's mission.[6] Second, there exists a significant risk of an erroneous deprivation of property, absent a hearing to test the government's claimed probable cause establishing that the restrained funds are, in fact, the proceeds of fraud. Indeed, nearly all of those funds were received well after, as the Indictment acknowledges, the website was updated to disclose Mr. Kolfage's compensation. There can be no logical or legal connection between donations made with knowledge of that

[5] The government also inexplicably cites *United States v. Bissell*, 866 F.2d 1343, 1352 (11th Cir. 1989), a case that is not only inapposite since it involved drug defendants who did not ask for a hearing on the propriety of the seizure (they instead complained that no such hearing was held), but the Second Circuit *rejected* the holding of *Bissell* in *Monsanto*, 924 F.3d at 1191.

[6] The government incorrectly posits a conflict of interest because of counsel's interest in being paid for legal work—such a rule would set up a conflict any time a lawyer is paid by a client. Indeed, the lawyers representing the United States would be equally conflicted by their interest in receiving their salaries.

compensation and an alleged fraud that concealed that compensation.[7] Third, the government's interest, and any burden placed upon the government, does not justify bypassing all process respecting the Order. The challenge here is to the nexus between the restrained We Build the Wall funds and the alleged fraud—"a technical matter far removed from the grand jury's core competence and traditional function." *Kaley*, 571 U.S. at 331 n.9. The finding of probable cause to believe the crime has been committed is not at issue in the Motion, *see id.* at 22, and thus the risks to the prosecution from being forced to preview its case are not presented.

Moreover, the government misconstrues *Monsanto* when it claims that *Monsanto* only protects a defendant's Sixth Amendment right to counsel. (Opposition at 9). *Monsanto* spent five pages analyzing the *due process* factors of *Eldridge*, which are expressly related to a Fifth Amendment, not Sixth Amendment, right. *Id.* at 1193. And, while *Monsanto* noted (under the first of those factors) that the private interest at stake in that case was particularly weighty because it involved not just the deprivation of property, but of property necessary to retain counsel of the defendant's choice, that analysis did not vitiate *Monsanto*'s invocation of the Fifth Amendment, or in any way denigrate a property owner's interest in using "his property in whatever manner he sees fit," free from government interference. *Id.*[8]

---

[7] It is no answer for the government to point to the continuation of the conspiracy to the date the Indictment was returned. Even if the conspiracy continued, that does not mean that it continued to generate "proceeds" subject to forfeiture.

[8] Because the movants are not defendants, and because the defendants are not the owners of the restrained funds, the private interest in using property free of government interference is greater, not less, than it would be where a defendant's funds are restrained. Thus, due process requires a hearing to continue the restraint regardless of any need to show that the restrained funds are necessary to retain counsel. However, in the event the Court requires a financial showing, We Build the Wall is

## IV. SECTION 853(K) IS INAPPLICABLE

Because a hearing is required as a matter of due process, it is immaterial whether, as the government claims, Section 853(k) purports to bar the Motion. But a straightforward reading of that subsection demonstrates that it does not. Section 853(k) states:

> Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may—(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k).

As explained in the Motion (Motion at 18 n.5), the entire gravamen of the movants' argument is that the funds in question—funds donated to We Build the Wall well after the compensation-related disclosure alleged in the Indictment—are *not* subject to forfeiture. In other words, the movants are not claiming a competing or superior interest in tainted property, and thus Section 853(k) is inapplicable.

Nor are the movants seeking to "intervene in a trial or appeal." 21 U.S.C. § 853(k). The movants have no interest in participating in either the trial of the charges in the Indictment, or in any appeal that may follow that trial. The movants' interest is much more limited—we do not seek to intervene generally in the case, we only seek modification of the Restraining Order, or, in the alternative, disclosure of

---

prepared to submit evidence in camera demonstrating that the restrained funds are necessary for it to retain counsel and continue its operations.

the relevant portions of the documents supporting it and a hearing. [9] For this reason as well, Section 853(k) is inapplicable. *Cf. Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (holding that nonnamed class member who will be bound by class settlement to which he objects has "the power to bring an appeal without first intervening").

Nor does the Motion constitute "an action at law or equity . . . concerning the validity of [the movants'] alleged interest in the property." 21 U.S.C. § 853(k). The Motion is directed at the government's inability to establish probable cause to believe that *all* of the funds restrained are the proceeds of the charged crimes. Again, the Motion is not asserting a competing or superior ownership interest in tainted property. Finally, as argued in the Motion, the Indictment here does not purport to make a probable cause finding that the property restrained is traceable to the fraud, as the opposition concedes. (Opposition at 14). Since the indictment here makes no such finding, Section 853(k)(2) does not apply.

Nor does Section 853(k) categorically bar a Rule 41(g) motion, as the government claims. Although the government cites a number of district court decisions denying Rule 41(g) motions on the particular facts presented (Opposition at 9-10), those decisions do nothing to undermine the controlling decision of the Second

---

[9] As noted in our letter to the Court dated October 29, 2020, the government's opposition incorrectly states that the Motion requests the unsealing of the government's *ex parte* application for the Order and its ex parte supporting affidavit. (Opposition at 14). The government opposes such an unsealing based on law enforcement interests. Id. at 14-16. Our motion did not make such a request. Rather, the Motion requested that the movants be given access (subject to an appropriate protective order) to those portions of the sealed *ex parte* submissions that purport to support probable cause that all donations to We Build the Wall are the proceeds of crime. The limited access we request, and the request for an appropriate protective order, serve to protect the law enforcement interests at stake, as well as the non-parties' due process rights; it is not the equivalent of blanket unsealing and public filing of the entirety of the *ex parte* documents.

12

Circuit, which refused to categorically deny the availability of Rule 41(g) as an equi-

table remedy, and expressly noted that the district court was free to reconsider and

grant a later Rule 41(g) application. *De Almeida*, 459 F.3d at 382-83. In other words,

controlling Second Circuit authority is fundamentally at odds with the government's

claim that movants are attempting an "end-run" by invoking Rule 41(g). (Opposition

at 9).

## V. THE GOVERNMENT'S EXTRA-JUDICIAL ATTEMPTS TO RESTRAIN PROPERTY BY FIAT ARE UNCONSTITUTIONAL

As noted above, the government has embraced its efforts to restrain property

by threat—restating its view that property never subjected to any court order is the

proceeds of crime and threatening criminal investigation or prosecution for any move-

ment of that property. (Opposition at 14). If the government were correct, it would

have no need of any court-issued restraining orders at all; it could simply "regulate

by prosecution" and investigate or charge (or threaten to do so) anyone who made use

of or transacted in property the government declared to be tainted. This type of uni-

lateral, draconian action flies in the face of the very statutes that the government has

invoked in seeking the Restraining Order. Moreover, it violates not only the Fifth

Amendment, but also the Fourth Amendment. The Second Circuit confronted just

such informal, extra-judicial attempts at seizing funds in *United States v. Cosme*, 796

F.3d 226 (2d Cir. 2015), and found a clear violation of the Fourth Amendment. In

*Cosme*, as here, the government sought a judicial restraining order, but it also sought

to restrain property—two bank accounts belonging to the defendant—extrajudicially

and by fiat: "The government delivered letters to Scottrade and Sterling National

13

Bank requesting that they freeze Cosme's accounts, believed to contain proceeds of unlawful activity." *Id*. at 229. The government claimed it had "probable cause" to believe the accounts were subject to forfeiture and claimed to be "in the process of obtaining a seizure warrant." *Id*. The government was not, in fact, "in the process of" obtaining a warrant, and indeed, never sought a warrant. *Id*. at 230. The Second Circuit held that this informal, extrajudicial attempt to restrain assets amounted to an unconstitutional, warrantless seizure in violation of the Fourth Amendment. *Id*. at 235.

The government's threats and intimations, designed to chill counsel and We Build the Wall from utilizing  donated funds that were intended to support the organization and its mission, are no different than the extrajudicial letters at issue in *Cosme*; this Court should reject them as unconstitutional attempts to seize property without a warrant.

The government's actions are not only unlawful, they are also detrimental to the interests of the donors. Donors to We Build the Wall contributed funds to the organization so that it might continue its mission—including building a third section of border wall and transferring title to its first section of border wall to the Department of Homeland Security. That mission is now at a standstill, and the organization itself is facing administrative dissolution. Whether or not that was the intent of the government, that has been the result, and that is certainly contrary to the interests of the donors.

14

## CONCLUSION

For the foregoing reasons, and for those stated in the Motion, the Court should (i) modify the Order to release funds that are not proceeds of crime; or (ii) provide access to Kris Kobach and We Build the Wall to the pertinent portions of documents submitted *ex parte* in connection with the Order's restraint of We Build the Wall's funds; and (iii) hold a hearing to determine whether there is probable cause supporting the traceability of the funds to the alleged fraud.

Dated:        November 2, 2020                    Respectfully submitted,

/s/ Kris Kobach
_____                          _____

Kris Kobach (*pro hac vice* request to           Justin S. Weddle
be submitted)                                     Julia I. Catania
Kobach Law PLLC                                   Weddle Law PLLC
P.O. Box 155                                      250 W. 55th St., Fl. 30
Lecompton, KS 66050                               New York, NY 10019
kkobach@gmail.com                                 212-997-5518
                                                  jweddle@weddlelaw.com
*General Counsel for We Build the
Wall, Inc.*                                       *Counsel for Kris Kobac*

15