UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

BRIAN KOLFAGE,
STEPHEN BANNON,
ANDREW BADOLATO, and
TIMOTHY SHEA,

                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/2020

20 Cr. 412 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant Timothy Shea moves for an order transferring his case to the District of Colorado.  Non-parties, We Build the Wall, Inc. ("We Build the Wall") and Kris Kobach, in his individual capacity and as general counsel for We Build the Wall, move for an order (1) modifying the sealed post-indictment restraining order issued on August 24, 2020, which prohibits the transfer of certain funds involved in Defendants' charged offenses, and (2) unsealing certain documents.  For the reasons stated below, both motions are DENIED.

## BACKGROUND

On August 17, 2020, a grand jury returned a sealed indictment charging Defendants, Brian Kolfage, Stephen Bannon, Andrew Badolato, and Timothy Shea, with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Indictment, ECF No. 2.  The indictment alleges that Defendants fraudulently induced donors to contribute millions of dollars to an online crowdfunding campaign known as We Build the Wall.  The indictment further alleges that Kolfage, Badolato, and Bannon made repeated false statements—on the crowdfunding website, We Build the Wall's website, and in social media, press releases, and donor solicitations—that

money from the fundraising campaign would not be taken for Defendants' personal use, and that all funds would go to the campaign's stated mission: building a wall along the southern border of the United States.  *Id.* ¶¶ 1, 9, 11–14.  Despite these representations, Defendants allegedly took hundreds of thousands of dollars for their own personal use.  *Id.* ¶ 17.  We Build the Wall raised approximately $25,000,000.  *Id.* ¶ 16.

As to Shea, the indictment alleges that he conspired to transfer to Defendants the funds raised by dint of the false statements.  *Id.* ¶ 2.  Shea, a Colorado resident, allegedly suggested via text message to Defendants that he create a shell corporation to send money to himself and Kolfage.  *Id.* ¶ 20; Def. Mem. at 4.  Consistent with this alleged proposal, Shea incorporated a limited liability corporation, which We Build the Wall then paid for "social media" work that was not performed.  Indictment ¶ 21.  These funds were then funneled to Shea and Kolfage.  *Id.*

The indictment further contemplates that if Defendants were convicted, they would have to forfeit certain property involved in the alleged crimes under 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c).  Indictment ¶¶ 34–35.  The indictment was unsealed on August 20, 2020.  ECF No. 3.

On August 24, 2020, the Court granted the Government's *ex parte* application for a sealed restraining order pursuant to 18 U.S.C. §§ 981, 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461.  The order restrains the transfer of funds into or out of three We Build the Wall bank accounts (the "Restraining Order").  Restraining Order at 1–2.  The Court found probable cause to grant the Restraining Order because the Government's application (the "Restraining Order Application") and the supporting affidavit of United States Postal Inspector Troy Pittenger (the "Pittenger Affidavit"), both filed under seal, demonstrate that assets in the accounts "are subject to restraint and forfeiture as proceeds of a conspiracy to commit wire fraud, in violation of Title

18, United States Code, Section 1343, and/or property involved in money laundering, in violation of Title 18, United States Code, § 1956." *Id.* at 1.  The Government then served the Restraining Order on the banks that maintain the accounts.  Gov't Opp'n to Modification at 2, ECF No. 42.

Though the Government had previously advised We Build the Wall and Kobach of its belief that the funds were subject to restraint and forfeiture, and though the Government had served document requests on Kobach individually,[1] the Government did not inform them that it had obtained the Restraining Order until a month after it was issued.  We Build the Wall Mot. at 6–9.

On October 13, 2020, We Build the Wall and Kobach filed a motion under seal seeking (1) an order modifying the Restraining Order to permit their access to funds that they claim are not connected with the charged offenses, or, (2) in the alternative, a hearing on whether the Restraining Order should be modified.  *Id.* at 1.  We Build the Wall and Kobach also moved to unseal the portions of the Restraining Order Application and the Pittenger Affidavit relied on by the Court, to the extent that such access could be granted pursuant to an appropriate protective order.  *Id.*; We Build the Wall Reply at 12 n.9, ECF No. 52.  Separately, on November 5, 2020, Shea moved to transfer his case to the United States District Court for the District of Colorado. Def. Mot., ECF No. 44.

---

[1] The state of New Jersey has separately served document requests on We Build the Wall.  We Build the Wall Mot. at 7.

**DISCUSSION**

I.      <u>Motion to Transfer</u>

Shea argues that because he is a resident of Colorado and has no connections to the Southern District of New York, his case should be transferred to the United States District Court for the District of Colorado in the interest of justice.  Def. Mot.; Def. Mem. at 1, ECF No. 45.

A.  Legal Standard

"As a general rule a criminal prosecution should be retained in the original district." *United States v. Parrilla*, No. 13 Cr. 360, 2014 WL 1621487, at *13 (S.D.N.Y. Apr. 22, 2014) (internal quotation marks and citation omitted), *aff'd sub nom. United States v. Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018).  However, under Federal Rule of Criminal Procedure 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."

To determine if transfer is proper, the Court considers the ten factors set forth in *Platt v. Minnesota Mining & Manufacturing Co.*:

> (1) location of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each district; and (10) any other special elements which might affect the transfer.

376 U.S. 240, 243–44 (1964).  In addition, courts should consider the convenience of "any victim."  *United States v. Calk*, No. 19 Cr. 366, 2020 WL 703391, at *2 (S.D.N.Y. Feb. 12, 2020).  Courts "should not give any one factor preeminent weight nor should it assume that the quantity of factors favoring one party outweighs the quality of factors in opposition."  *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997).  Rather, how the factors are

weighed is committed to the sound discretion of the district court.  *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).  Ultimately, the defendant carries the burden of showing that "the interests of justice require transfer."  *United States v. Estrada*, 880 F. Supp. 2d 478, 482 (S.D.N.Y. 2012); *see also United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) ("To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." (internal citation omitted)).

      B.  Application of the *Platt* Factors

          1.  Location of Defendant

The first factor weighs somewhat in favor of transfer.  Shea resides in Colorado, and his family and business are located there.  Def. Mem. at 8.  However, a defendant's residence "is [neither] dispositive [n]or has independent significance in determining whether transfer is warranted," though it may be considered in reference to the other factors.  *United States v. Riley*, 296 F.R.D. 272, 276 (S.D.N.Y. 2014) (citing *Platt*, 376 U.S. at 245); *Maldando-Rivera*, 922 F.2d at 965.  Nevertheless, absent countervailing concerns, the fact that Shea resides in Colorado weighs in favor of transfer.  *See Spy Factory*, 951 F. Supp. at 456.

          2.  Location of Possible Witnesses

The second factor does not weigh in favor of transfer.  To demonstrate that the location of possible witnesses favors transfer, the defendant cannot use "naked allegation[s] that witnesses will be inconvenienced by trial in a distant forum."  *Riley*, 296 F.R.D. at 276.  Instead, the defendant must "offer specific examples of witnesses' testimony and their inability to testify

because of the location of the trial" including "concrete demonstrations" of the proposed testimony. *Id.*

Shea states that he intends to call in his case-in-chief a number of character witnesses from Colorado, and claims that "[t]raveling to the Southern District of New York will result in the inconvenience of a number of people throughout the trial, particularly in light of the difficulty of travel during the COVID-19 pandemic." Def. Mem. at 9; Def. Reply at 3, ECF No. 54. Shea does not, however, identify the witnesses or their testimony, nor does he offer any details as to why they cannot travel to New York other than that "their travel expenditures will be costly and burdensome." *Id.* This is insufficiently specific to demonstrate that this factor weighs in favor of transfer, even at this early stage of the case. *See United States v. Blakstad*, No. 19 Cr. 486, 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020) (finding this factor did not weigh in favor of defendant where he "merely assert[ed] that his 'witnesses are located in Southern California,' and that bringing them to Manhattan 'can make their use impractical'"); *United States v. Avenatti*, No. 19 Cr. 374, 2019 WL 4640232, at *3 (S.D.N.Y. Sept. 24, 2019) ("[T]ransfer is unwarranted based on the mere possibility that unnamed, purported character witnesses will be unable to testify because of the location of the trial."). Moreover, government funds are available to assist Shea with witness fees, allaying concerns regarding witnesses' travel expenses. *See* 28 U.S.C. § 1825.

The Government has not finalized its trial witness list, but states that it will be calling witnesses from across the country, including New York, but none from Colorado. Gov't Opp'n to Transfer at 7, ECF No. 45. The New York-based witnesses will include victims, whose convenience the Court must consider as well. *Id.* at 7–8; Fed. R. Crim. P. 21(b) advisory

committee's note.  The Government offers little information about its witnesses, which counterbalances Shea's similarly vague statements regarding his.

Although Shea does suggest that COVID-19 would make travel more difficult, this fact weighs "against holding any trial at all, rather than *where* to hold the trial."  *Blakstad*, 2020 WL 5992347, at *6 (emphasis in original).  Witnesses will have to travel whether the trial is held in Colorado or New York.  Therefore, the pandemic does not alter the balance of this factor, and the Court concludes that the location-of-witnesses factor is neutral.

### 3.  Location of Events

The factor of the location of the events is also neutral.  The scheme, as alleged in the indictment, was national in scale: the fraud was carried out throughout the country over the internet, Defendants are residents of multiple states, and Defendants made communications to and from different states in organizing the conspiracy.  Gov't Opp'n to Transfer at 9; *see generally* Indictment.  Shea first argues that because he did not travel to the Southern District of New York, "his alleged involvement must logically be exclusively limited to activity that occurred outside of the Southern District."  Def. Mem. at 9.  However, in the age of digital communication, this argument does not hold: even if Shea never physically entered New York, it does not mean he cannot be connected to activity that took place here.  *Blakstad*, 2020 WL 5992347, at *4 (finding the third factor neutral where the defendant did not work in New York, but his co-conspirators had acted in Manhattan and "several calls, emails, and wire transfer moved through Manhattan").

Shea next argues that the alleged conduct is unconnected to the Southern District of New York, and the Government's mere allegation of a "possibility of connection" to the Southern

District is insufficient to link the events to this District.[2]  Def. Reply at 1–2 (emphasis omitted). It is true that where a conspiracy has a "nerve center" located in the transferee district, this factor can favor transfer to that center.  *United States v. Alter*, 81 F.R.D. 524, 526 (S.D.N.Y. 1979) (finding that the location of events favored transfer to an alternate forum where "[i]t is beyond dispute that most, if not all, of the acts and conduct in furtherance of the alleged scheme to defraud occurred in [the alternate venue] and that it was the 'nerve center' of the alleged illicit operations in carrying on the scheme . . . .").  Shea, however, does not claim that Colorado is the "nerve center" of the conspiracy, nor do the facts alleged in the indictment suggest that most of the conspiratorial acts took place there.  *See generally* Indictment.

Rather, in cases of nationwide criminal activity without a nerve center, such as this one, the location of the events does not favor either side.  *Spy Factory*, 951 F. Supp. at 457.  Though aspects of the conspiracy took place outside of the Southern District of New York, the Government states that there are victims of the conspiracy who are located in New York.  Gov't Opp'n to Transfer at 7.  This indicates that Defendants "intentionally projected their fraud nationwide, including into this [d]istrict," thus making this factor "not particularly persuasive" for transfer.  *Estrada*, 880 F. Supp. 2d at 483.  Because of the country-wide scope, this factor favors neither side.

### 4.  Location of Documents

The location of documents likely to be involved is also neutral.  Shea states that any documentary evidence must be located outside of New York, as he has never resided in New

---

[2] Shea appears skeptical that venue is proper in the Southern District of New York.  *See, e.g.*, Def. Mem. at 9. However, the motion is not a challenge to venue, Def. Mot., and Shea first raises a more explicit argument against venue in this District in his reply brief, Def. Reply at 1–3.  Therefore, despite Shea's skepticism, the Court is not at this time considering the venue issue.  *United States v. Martinez*, 862 F.3d 223, 234 (2d Cir. 2017) ("[N]ew arguments may not be made in a reply brief."), *cert. granted*, *judgment vacated on other grounds sub nom. Rodriguez v. United States*, 139 S. Ct. 2772 (2019).

York.  Def. Mem. at 10.  He also alleges that evidence he will produce is located in Colorado, though he does not identify any such evidence.  *Id.*  The Government, however, explains that as a result of search warrants issued at the time of arrest, the "relevant physical evidence" is located in this District, as is other evidence relied on in charging the case.  Gov't Opp'n to Transfer at 10.  Where the evidence is located mainly in New York, but this was "voluntarily accomplished" by the Government, this factor is neutral.  *Spy Factory*, 951 F. Supp. at 458.  Regardless, "[i]t is well settled that given the conveniences of modern transportation and communication, the location of the documents is a minor concern."  *Estrada*, 880 F. Supp. 2d at 484 (internal quotation marks omitted).

### 5.   Disruption to Defendant's Business

The factor concerning disruption to the defendant's business does not weigh in favor transfer.  Shea states that as his business is "developing and growing in the local sector," he must "remain engaged and hands-on with all elements of his business," and that "[a] start-up company in its infancy will undoubtedly be disrupted if a trial were to take place in New York."  Def. Mem. at 10.  Shea does not explain, however, why the trial would cause more disruption if he were in New York rather than in Colorado.  "In either location a trial will disrupt [Shea's] ability to run his business" due to a trial's all-consuming nature.  *Parrilla*, 2014 WL 1621487, at *15.  Moreover, Shea has not demonstrated why remote technology, which is now all the more common under pandemic circumstances, would not permit him to manage his business from afar.  *See Spy Factory*, 951 F. Supp. at 458 (finding the impact on defendants' businesses was minimized because "no defendant has shown why telephone and fax machine communication is insufficient to maintain the minimal contact that would be available to any of them over a lunch

hour or after-hours if the trial were moved"). Shea, therefore, has not met his burden to demonstrate that this factor weighs in favor of transfer.

6. Expense to the Parties

The sixth factor, expense to the parties, weighs in favor of transfer. Shea has proven that he qualifies for assistance under the Criminal Justice Act ("CJA"), because his "net financial resources and income are insufficient to obtain qualified counsel." Judicial Conference of the United States, 7 Guide to Judiciary Policy § 210.40.30(a); Gov't Opp'n to Transfer at 13. Although CJA funds are financing his defense, thus mitigating his costs, this does not completely offset expenses related to, for instance, travel and lodging. In addition, Shea's assets have been frozen by the Government. Def. Reply at 2. In these situations, courts have suggested that the cost to the defendant weighs in favor of transfer. *See Spy Factory*, 951 F. Supp. at 459.

The Government has stated that were the case to be transferred, the New York-based lawyers, witnesses, and experts, including three Assistant United States Attorneys, two paralegals, several federal law enforcement agents, and computer forensic experts, would have to relocate to Colorado for weeks. Gov't Opp'n to Transfer at 13–14. Where the effect of a motion to transfer is "merely to shift the economic burden to the government," this factor generally weighs against transfer. *United States v. Canale*, No. 14 Cr. 713, 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (quoting *United States v. Carey*, 152 F. Supp. 2d 415, 422 (S.D.N.Y. 2001)). However, given Shea's CJA status, and mindful that though the Government wishes to minimize cost to the taxpayers, "the Government is in a better position than the Defendant[] to bear such expenses," this factor weighs in favor of transfer. *Riley*, 296 F.R.D. at 277.

7.   Location of Counsel

The location of counsel weighs against transfer.  Both Shea's lawyer and the Government attorneys are in New York.  *See Parrilla*, 2014 WL 1621487, at *15.  Shea alleges that the distance between him and his attorney has undermined his ability to mount an effective defense. Def. Mem. at 11.  However, it is common for Defendants to have lawyers in other states, and the geographic distance here does not weigh in favor of transfer.  *See Spy Factory*, 951 F. Supp. at 460 (finding the location of counsel factor did not weigh in favor of transfer from New York to Texas despite two out of three Texas-based defendants retaining New York attorneys).  The location of counsel factor, therefore, weighs against transfer.

8.   Accessibility of Trial Location

Shea does not dispute that New York is an accessible location.  Def. Mem. at 11. However, he argues that because of the location of his witnesses, Colorado would be more accessible.  *Id.*  This simply rehashes the argument on factor two, and for the same reasons, this factor does not weigh in favor of transfer.

9.   Relative Docket Conditions

The relative docket conditions weigh against transfer.  Shea states that he "cannot opine to the docket conditions of the Court."  *Id*. at 11.  The Government, however, has noted that based on the United States Court's Federal Court Management Statistics for the year ending June 30, 2020, the District of Colorado had more civil and criminal felony filings per judge than the Southern District of New York, and had completed slightly more trials per judge.  Gov't Opp'n to Transfer at 14; Judicial Caseload Profile, Federal Judicial Center (June 30, 2020), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/06/30-1. Therefore, disparities in docket conditions do not weigh in favor of transfer.

Shea also argues that due to COVID-19, it is unclear when or how a trial would be held. Def. Mem. at 11. However, this Court has already "made itself available, familiarized itself with this case, and scheduled a trial date that is convenient for both parties." *Canale*, 2015 WL 3767147, at *4. To be sure, the COVID-19 pandemic renders the trial date uncertain, but Shea offers no evidence that he would get an earlier trial in Colorado, that COVID-19 conditions in Colorado would not render any trial date there equally uncertain, or that transferring would not result in "delays and duplication of judicial resources." *Id.* This factor, therefore, weighs against transfer.

### 10. Special Considerations

Finally, the consideration of avoiding duplicative trials weighs strongly against transfer. Shea is one of four defendants charged in the indictment, and the others have not joined his motion to transfer. Transferring Shea's case would, therefore, require severing the case against him and conducting two trials on the same conspiracy, thus imposing a "double burden on the judiciary." *Parrilla*, 2014 WL 2200403, at *2. "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Severing and transferring a defendant "requires serious consideration of the Government's interest in avoiding duplicate trials" and, if done "without good reason," is "contrary to the interest of justice." *Parrilla*, 2014 WL 2200403, at *2 (quoting *United States v. Valdes*, No. 05 Cr. 156, 2006 WL 738403, at *10 (S.D.N.Y. Mar. 21, 2006) and *United States v. Thomas*, No. 06 Cr. 365, 2006 WL 2283772, at *2 (S.D.N.Y. Aug. 6, 2006) (internal quotation marks omitted)). Shea has not provided "good reason" for severance, which the Court concludes is contrary to the interest of justice. *See id.* (finding severance as weighing against transfer given that "the Court has already devoted significant resources to this case and set a trial date, and an

additional trial . . . would be required." (internal citations omitted)).  This factor, therefore,

weighs heavily against severance and transfer of Shea's case to Colorado.

In sum, the location of the defendant and the expenses of the parties weigh in favor of

transfer, but the other factors are neutral or weigh against transfer, and the interest of avoiding

additional trials weighs heavily against transfer.  Balancing these factors, the Court finds that

Shea has not carried his burden to show that transfer is warranted under Rule 21(b).

Accordingly, Shea's motion to transfer is DENIED.

II.     Motion to Modify the Restraining Order

The Court construes the motion by We Build the Wall and Kobach as in effect requesting

to intervene in this case to object to the Restraining Order, on the ground that it encompasses

funds not subject to forfeiture.  Because third parties are statutorily barred from intervention in a

criminal case to challenge a forfeiture order, the motion is DENIED.

A.  Legal Standard

The criminal forfeiture proceedings in this case are governed by Federal Rule of Criminal

Procedure 32.2 and 21 U.S.C. § 853.[3]  *See* 28 U.S.C. § 2461(c).  Though on its face § 853

applies only to controlled substances, the framework set forth in the section is applied to any

offense for which civil or criminal forfeiture of property is authorized, such as the crimes

charged in this case, by 28 U.S.C. § 2461(c).

This Court issued the Restraining Order pursuant to 21 U.S.C. § 853.  Restraining Order

at 1.  Section 853(e) provides that:

> Upon application of the United States, the court may enter a
> restraining order or injunction . . . or take any other action to
> preserve the availability of property described in subsection (a) for
> forfeiture under this section—(A) upon the filing of an indictment

---

[3] Section 853(d), which applies only in cases in which the defendant is convicted of a violation of the Controlled
Substances Act, does not apply here.  21 U.S.C. § 853(d); 28 U.S.C. § 2461(c).

or information . . . . alleging that the property with respect to which
the order is sought would, in the event of conviction, be subject to
forfeiture under this section.

21 U.S.C. § 853(e).

In sum, the foregoing statutory framework for criminal forfeiture provides that if, upon
the return of an indictment, the court finds probable cause that certain property would be subject
to forfeiture upon conviction, the court may enter a restraining order to preserve the availability
of that property. *See* 21 U.S.C. § 853(e)(1); *Kaley v. United States*, 571 U.S. 320, 323 (2014).

Because such orders may impinge on the rights of third parties, the forfeiture framework
includes procedures for an ancillary, post-conviction proceeding where third parties can make
claims against forfeited property. 21 U.S.C. § 853(n). This § 853(n) ancillary proceeding takes
place with full notice to all interested parties, and includes the presentation of evidence and
witnesses. *Id*. However, outside of this ancillary proceeding, a claimant is not permitted to
intervene in a criminal case involving the forfeiture, or to initiate a lawsuit against the
government concerning the forfeiture, after an indictment has been returned. 21 U.S.C. §
853(k).[4]

It is "well settled" that § 853(k) means that an § 853(n) ancillary proceeding is the
"exclusive avenue" for a third party to lay claim to forfeited assets. *DSI Assocs. LLC v. United
States*, 496 F.3d 175, 183 n.12 (2d Cir. 2007); *see also United States v. Kozeny*, No. 05 Cr. 518,
2011 WL 1672473, at *3 (S.D.N.Y. Apr. 29, 2011) (applying § 853(k)'s bar on intervention to a
third party seeking to challenge a post-indictment restraining order).

---

[4] Section 853(k), entitled "[b]ar on intervention," states:  Except as provided in subsection (n) [*i.e.*, through
ancillary proceedings], no party claiming an interest in property subject to forfeiture under this section may—(1)
intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2)
commence an action at law or equity against the United States concerning the validity of his alleged interest in the
property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture
under this action.  21 U.S.C. § 853(k).

We Build the Wall and Kobach argue that the § 853(k) bar on intervention does not apply for four reasons: (1) § 853 does not apply to pre-conviction forfeiture; (2) they only seek modification regarding untainted (and thus, non-forfeitable) assets, to which § 853 does not apply; (3) notwithstanding § 853(k), Federal Rule of Criminal Procedure 41(g) permits them to challenge the forfeiture; and (4) notwithstanding § 853(k), due process requires a hearing before such forfeiture.  For the reasons stated below, these arguments are unavailing.

### B.   Application of 21 U.S.C. § 853 to Pre-Conviction Forfeiture Proceedings

Section 853 applies "to all stages of a criminal forfeiture proceeding."  28 U.S.C. § 2461(c).  Courts regularly interpret the § 853 framework to apply pre-conviction.  *See, e.g.*, *United States v. Dupree*, 781 F. Supp. 2d 115, 129 (E.D.N.Y. 2011).

Congressional action after *United States v. Razmilovic*, 419 F.3d 134 (2d Cir. 2005), drives home this point.  In *Razmilovic*, the Second Circuit held that an earlier version of 28 U.S.C § 2641(c) applied the § 853 framework only to post-conviction forfeiture.  *Id*. at 136–37. The Second Circuit based this holding on the language of § 2461(c), which at that time stated that "*upon conviction*, the court shall order the forfeiture of the property in accordance with the procedures set forth in 21 U.S.C. § 853."  *Id*. (emphasis added and alterations adopted).  In 2006, Congress, at least in part in response to *Razmilovic*, amended § 2461(c) to strike the words "upon conviction," and to specify that "[t]he procedures in [§ 853] apply to *all stages of a criminal forfeiture proceeding*."  28 U.S.C. § 2461(c) (emphasis added); *see United States v. Mann*, 140 F. Supp. 3d 513, 527, 530 (E.D.N.C. 2015).  This amendment makes clear that Congress rejected the holding of *Razmilovic*.  *See United States v. Schlotzhauer*, No. 06 Cr. 00091-0103, 2008 WL 320717, at *9 (W.D. Mo. Feb. 4, 2008) ("It appears that Congress has clarified its intent that section 2461(c) authorizes the pretrial restraint of assets.").

Courts have, therefore, interpreted the amended § 2461(c) for the "unremarkable proposition" that § 2461(c) permits pretrial restraints on property through § 853. *Mann*, 140 F. Supp. 3d at 528; *see also United States v. Capoccia*, No. 03 Cr. 35, 2011 WL 1930677, at *5 (D. Vt. May 19, 2011).

This Court too interprets the plain language of amended § 2461(c) to apply § 853's framework to all stages of a criminal forfeiture proceeding, including the post-indictment, pre-conviction phase. Therefore, the § 853(k) bar on intervention applies here.[5]

C.   Challenge to the Forfeitability of Assets

We Build the Wall and Kobach argue that they merely assert their rights over assets that fall outside the scope of Defendants' alleged offenses, to which § 853 does not apply, and not over properly forfeitable assets. We Build the Wall Reply at 11. In other words, they seek to challenge the forfeitability of certain assets covered by the Restraining Order.

Second Circuit precedent forecloses such arguments. *See United States v. Watts*, 786 F.3d 152, 175 (2d Cir. 2015); *DSI Associates LLC*, 496 F.3d at 181–185. In *Watts*, the Second Circuit considered a third party's argument about the forfeitability of certain assets under § 853. 786 F.3d at 175. The court reasoned first that, "[w]e have consistently interpreted § 853(k) to mean that an ancillary proceeding under § 853(n) is 'the *only* avenue for a post-indictment third-party claim to forfeited property' under the criminal forfeiture statute." *Id.* (emphasis in original) (citing *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006)). The court then held that § 853(n) does not authorize challenges to a forfeiture based on "the forfeitability of a defendant's

---

[5] We Build the Wall and Kobach argue that they do not seek to intervene in the trial, and only seek to modify the Restraining Order. We Build the Wall Reply at 11–12. However, like other courts, this Court construes this challenge to the Restraining Order, an order issued under § 853, as a request for intervention under § 853(k). *See Kozeny*, 2011 WL 1672473, at *3 (finding § 853(k) bars pretrial intervention in a criminal case to challenge a post-indictment restraining order); *United States v. Rogers*, No. 09 Cr. 441, 2010 WL 1872855, at *5 (N.D. Ga. Apr. 12, 2010), *report and recommendation adopted*, No. 09 Cr. 441, 2010 WL 1872858 (N.D. Ga. May 7, 2010) (collecting cases).

property by interested third parties," and affirmed the district court's rejection of that argument. *Id.* at 175–76; *see also United States v. Egan*, 654 F. App'x 520, 522 n.2 (2d Cir. 2016); Fed. R. Crim. P. 32.2 Advisory Committee Note ("Th[e ancillary] proceeding does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property.").

Here, We Build the Wall and Kobach effectively claim ownership over the funds, and argue that such funds are untouched by Defendants' alleged conspiracy. But, as *Watts* and *DSI Associates LLC* make clear, a third party can only intervene to challenge a finding of probable cause that assets are subject to forfeiture in a § 853(n) proceeding. We Build the Wall and Kobach are, therefore, barred by § 853(k) from intervening on the ground that there was no probable cause to restrain certain assets.

### D.   Federal Rule of Criminal Procedure 41(g)

We Build the Wall and Kobach also argue that their motion can be interpreted as a motion under Federal Rule of Criminal Procedure 41(g), and is, therefore, permissible despite § 853(k)'s bar on intervention. "Rule 41(g) permits a person aggrieved by the government's unlawful seizure or deprivation of property to move for specific relief: the property's return." *Adeleke v. United States*, 355 F.3d 144, 149 (2d Cir. 2004). "[W]here no criminal proceedings against the movant are pending or have transpired, a motion for the return of property is treated as a civil equitable proceeding." *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992) (internal quotation marks, citation, and alterations omitted). Rule 41(g) is an equitable remedy "available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction," and, therefore, "[j]urisdiction under Rule 41 is to be exercised with great restraint and caution." *De Almeida*, 459 F.3d at 382 (internal quotation marks and citation omitted).

However, a Rule 41(g) motion brought after an indictment is clearly barred by § 853(k). *Chaim v. United States*, 692 F. Supp. 2d 461, 470 (D.N.J. 2010) ("[O]nce there is an indictment with a forfeiture allegation, an innocent third party . . . cannot then *commence* a Rule 41(g) proceeding." (emphasis in original)). A Rule 41(g) motion brought post-indictment can be read either as a bid to intervene in a criminal case or as an action "concerning the validity of [a third party's] interest in property" brought "subsequent to the filing of an indictment . . . alleging that the property is subject to forfeiture under [§ 853]"—both of which are barred by § 853(k). 21 U.S.C. § 853(k); *Rogers*, 2010 WL 1872855, at *4; *see also United States v. White*, No. 13 Cr. 0436, 2014 WL 3898378, at *4 (D. Md. Aug. 7, 2014); *United States v. Huggins*, No. 13 Cr. 155, 2013 WL 1728269, at *2 (S.D.N.Y. Mar. 22, 2013), *report and recommendation adopted*, No. 13 Cr. 155, 2013 WL 1736466 (S.D.N.Y. Apr. 11, 2013) (finding that because the third party filed their Rule 41(g) motion slightly before the indictment, the third party "is not necessarily limited to a section 853(n) proceeding—as it plainly would be had its motion been filed slightly later."). Although the Second Circuit left open the possibility that a Rule 41(g) motion filed *pre-indictment* would be permissible, it has not spoken to a Rule 41(g) motion filed post-indictment. *De Almeida*, 459 F.3d at 383 (affirming a district court's denial of a Rule 41(g) motion filed pre-indictment because § 853(n) afforded an adequate remedy at law).

The indictment in this case was returned on August 17, 2020, approximately two months before We Build the Wall and Kobach brought their motion. Therefore, even if We Build the Wall and Kobach's motion were styled as a Rule 41(g) motion, Section 853(k) bars that motion.

### E.  Due Process

Finally, We Build the Wall and Kobach argue that their Fifth Amendment due process rights were violated by the seizure of their property without a proper hearing, either before or

after seizure.  We Build the Wall Mot. at 12–13; We Build the Wall Reply at 9.[6]

Although the Supreme Court has made clear that pretrial hearings on forfeiture may be required when the forfeiture order is challenged by a criminal defendant, particularly where their Sixth Amendment right to counsel is implicated, the law concerning the rights of third parties is less clear.  *See Kaley*, 571 U.S. at 324; *Monsanto*, 924 F.2d at 1193–98.  However, courts have generally determined that § 853(n) proceedings provide sufficient due process to third parties. For instance, the Fourth Circuit in *United States v. McHan*, 345 F.3d 262, 269 (4th Cir. 2003), considered the third parties' argument that they should be afforded a hearing before, or soon after, a preliminary order of forfeiture.  The court noted that this argument was "a challenge to the statutory scheme," which effectively contended that "due process required that they, as third parties, be given an opportunity to interject themselves into the sentencing phase of the criminal case."  *Id*.  The Fourth Circuit rejected this argument, holding that "it was Congress's clear intention in passing § 853(n) that third parties have an opportunity to be heard and to be awarded relief if they were to show a cognizable interest in the property preliminarily ordered forfeited" and so "§ 853(n) provides all of the process due."  *Id.* at 270; *see also Libretti v. United States*, 516 U.S. 29, 44 (1995) (denying the argument that a § 853(n) proceeding "is inadequate to safeguard third-party rights" because "Congress has determined that § 853(n) . . . provides the means by which third-party rights must be vindicated"); *Kozeny*, 2011 WL 1672473, at *5 (finding due process did not require an early hearing on a post-indictment restraining order); *cf.*

---

[6] Contrary to We Build the Wall and Kobach's argument, the relevant portion of § 853 does not require a hearing before issuing a post-indictment restraining order.  Unlike § 853(e)(1)(B), which governs the issuance of restraining orders *pre*-indictment, § 853(e)(1)(A), which governs restraining orders issued *post*-indictment, does not include a requirement for notice and hearing.  21 U.S.C. § 853(e)(1); *Kaley*, 571 U.S. at 324 n.2 (noting that, as opposed to § 853(e)(1)(A), "[t]he forfeiture statute itself requires a hearing when the Government seeks to restrain the assets of someone who has not yet been indicted.").  "[B]ecause of the exigent circumstances presented, notice and a hearing need not occur before an *ex parte* restraining order is entered pursuant to section 853(e)(1)(A)."  *United States v. Monsanto*, 924 F.2d 1186, 1193 (2d Cir. 1991), *abrogated on other grounds by Kaley*, 571 U.S. 320.

*United States v. Daugerdas*, 892 F.3d 545, 557 (2d Cir. 2018) (finding that the due process

violation was cured where the third party had a right to replead a § 853(n) petition to assert her

interest in the forfeited funds); *DSI Assocs. LLC*, 496 F.3d at 186–187 (holding that a third party

did not have standing for a § 853(n) proceeding after conducting a due process analysis).

      Moreover, even if the Court were to apply the test laid out in *Mathews v. Eldridge*, 424

U.S. 319 (1976), to determine the amount of process due, it would not grant We Build the Wall

or Kobach a hearing before the § 853(n) proceeding.  *Mathews* requires courts to weigh:

> First, the private interest that will be affected by the official action; second, the risk of an
> erroneous deprivation of such interest through the procedures used, and the probable
> value, if any, of additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the fiscal and administrative
> burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.  Because We Build the Wall and Kobach will be afforded a hearing under

§ 853(n) after trial, their true contention is that due process requires they have a hearing sooner

rather than later.  Not so.

      First, regarding the private interest, the Second Circuit has concluded that criminal

defendants have a strong private interest in pretrial hearings on forfeiture orders when the order

impedes their Sixth Amendment right to counsel.  *See United States v. Cosme*, 796 F.3d 226, 232

(2d Cir. 2015).  However, it has not held that other constitutional rights give rise to other

similarly strong private interests for criminal defendants, let alone the interests of third-party

claimants.  *Id.* at 233 n.2 (noting that "several sister circuits have indicated that a pretrial, post-

deprivation adversarial hearing is not required absent Sixth Amendment concerns").  We Build

the Wall and Kobach allege interests in their ability to use their money in furtherance of their

mission and to pay Kris Kobach's legal fees with respect to the Government's document

requests, We Build the Wall Reply at 9, but those interests are less weighty—and less time

sensitive—than a criminal defendant's Sixth Amendment right to counsel. *Cosme*, 796 F.3d at

233; *see also United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("Due process does not

automatically require a [post-restraint, pretrial] hearing and a defendant may not simply ask for

one. As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she

has no assets, other than those restrained, with which to retain private counsel and provide for

herself and her family."). Moreover, the Restraining Order does not prevent We Build the Wall

from utilizing funds obtained after the Restraining Order issued. Gov't Resp. at 3. This

additional source of funding lessens the immediate interest of We Build the Wall.

Second, there is little value to an additional hearing. In issuing the Restraining Order,

this Court has already concluded that the Government demonstrated probable cause. Restraining

Order at 1. This determination will be tested at trial, and in the § 853(n) proceeding. We Build

the Wall and Kobach offer no explanation as to how a hearing conducted now would better guard

against an erroneous deprivation of property, as opposed to a hearing conducted with the benefit

of completed discovery and jury-made findings of fact. *See Sunrise Acad. v. United States*, 791

F. Supp. 2d 200, 206 (D.D.C. 2011) ("The only added benefit of a pretrial hearing would be an

earlier, but preliminary, determination.").

Third, the Government's interest in avoiding additional third-party, pretrial proceedings

is strong. Allowing such litigation would endanger Defendants' rights to a speedy trial, as it

could prevent the Government from turning its focus to trial. *Id.* In drafting § 853, Congress

observed that a pretrial hearing

> would require the government to prove the merits of the underlying criminal case and
> forfeiture counts and put on its witnesses well in advance of trial . . . such requirements
> can make obtaining a restraining order—the sole means available to the government to
> assure the availability of assets after conviction—quite difficult . . . [Such] requirements
> m[ight] make pursuing a restraining order inadvisable from the prosecutor's point of view

because of the potential for damaging premature disclosure of the government's case and
trial strategy. . .

*Id.* at 207 (quoting S. Rep. No. 98-225 (1984)).

The interests of the Government may be outweighed by a criminal defendant's right to
counsel.  *See Monsanto*, 924 F.2d at 1193–98.  But where, as here, a third party requests access
to funds before a statutorily mandated hearing, "the interests of the government, the public, and
the criminal defendant in a fair and orderly trial on the merits of the criminal indictment must
take precedence over the petitioners' desire for earlier adjudication of their claims."  *Sunrise
Acad.*, 791 F. Supp. 2d at 207.  The Court concludes, therefore, that § 853(n) provides We Build
the Wall and Kobach with due process.

Therefore, We Build the Wall and Kobach's motion to modify the Restraining Order, or
for a hearing, is DENIED.

III.     Motion to Unseal

We Build the Wall and Kobach also request that the Restraining Order Application and
the Pittenger Affidavit supporting the Restraining Order be unsealed, to the extent that they be
"given access (subject to an appropriate protective order) to those portions of the sealed *ex parte*
submissions that purport to support probable cause that all donations to We Build the Wall are
the proceeds of crime."  We Build the Wall Reply at 11–12, 12 n.9.

It is well-established that motions to intervene to "assert the public's First Amendment
right of access to criminal proceedings" are appropriate.  *United States v. Aref*, 533 F.3d 72, 81
(2d Cir. 2008).  However, We Build the Wall and Kobach are not asserting the public's right of
access; they state that their request is not for "the equivalent of blanket unsealing and public
filing of the entirety of the *ex parte* documents."  We Build the Wall Reply at 12.  We Build the
Wall and Kobach instead rely on the principle that the court should "safeguard *party* access to

the evidence tendered in support of a requested court judgment." We Build the Wall Mot. at 23–24 (emphasis added) (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987)). But neither We Build the Wall nor Kobach is a party to this case. The Restraining Order Application and the Pittenger Affidavit will be provided to Defendants, the proper parties. Gov't Opp'n to Modification at 14. And, in connection with the § 853(n) proceeding, discovery will be conducted so that We Build the Wall and Kobach may obtain the requisite information, if such information has not already been disclosed at trial. We Build the Wall and Kobach's argument in favor of access is, therefore, unavailing.

The Government has consented to unsealing the Restraining Order. Gov't Opp'n to Modification at 15. It was issued under seal to prevent dissipation of the funds before service on the relevant financial institutions was effected. Restraining Order at 9. That concern is no longer present. Therefore, the Restraining Order shall be unsealed and filed on the public docket. In addition, as We Build the Wall and Kobach's motion was filed under seal because of its reference to the then-sealed Restraining Order, *see* Oct. 13, 2020 Order, We Build the Wall and Kobach's motion and its accompanying documents, ECF No. 38, shall also be unsealed.

However, the Government requests that the Restraining Order Application and the Pittenger Affidavit remain under seal. Gov't Opp'n to Modification at 15. The Court concludes that continued sealing is warranted.

When deciding whether judicial documents should remain under seal, the Court must weigh the presumption of public access afforded judicial documents against the other interests implicated by disclosing the documents. *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). One is the potential adverse effect on law enforcement interests. *Id.* The Restraining Order Application and the Pittenger Affidavit provide more details regarding the Government's

investigation than is contained in the indictment or is publicly known, including the full scope

and nature of the investigation, the identities of individuals and entities who may be implicated,

and further details about the evidence collected thus far.  Gov't Opp'n to Modification at 15.

This information, if disclosed, could hamper the investigation.  Where an investigation is

"ongoing," and the sealed document identifies subjects and the extent of the investigation,

"[c]ompelling reasons exist to maintain the secrecy of the Government's investigation."  *United

States v. Park*, 619 F. Supp. 2d 89, 94 (S.D.N.Y. 2009).

Moreover, disclosure would implicate the privacy interests of uncharged individuals and

entities, who were not named in the indictment but are named in the Restraining Order

Application and the Pittenger Affidavit.  *Amodeo*, 71 F.3d at 1050.  This interest may be of

particular concern in a case such as this, which is the subject of pretrial publicity.  In addition,

there is no prejudice to Defendants if the Restraining Order Application and the Pittenger

Affidavit remain under seal, as Defendants have access to the documents.

Accordingly, We Build the Wall and Kobach's request to unseal the Restraining Order

Application and the Pittenger Affidavit is DENIED.

**CONCLUSION**

For the reasons stated above, Shea's motion to transfer is DENIED.  We Build the Wall and Kobach's motion to intervene and to unseal the Restraining Order Application and the Pittenger Affidavit is DENIED.  The Restraining Order shall be UNSEALED.

The Clerk of Court is directed to unseal: (1) the Restraining Order and (2) We Build the Wall's motion, ECF No. 38.  The Clerk of Court is further directed to terminate the motions at ECF Nos. 38 and 44.

SO ORDERED.

Dated: December 14, 2020
       New York, New York

_____
        ANALISA TORRES
    United States District Judge