UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

BRIAN KOLFAGE,
STEPHEN BANNON,
ANDREW BADOLATO, and
TIMOTHY SHEA

*Defendants.*

20 Cr. 412 (AT)

**DEFENDANT BRIAN KOLFAGE'S MOTION TO MODIFY POST-INDICTMENT RESTRAINING ORDER AND REQUEST FOR HEARING**

HARVEY A. STEINBERG
SPRINGER AND STEINBERG, P.C.
1600 Broadway, Suite 1200
Denver CO 80202
(303) 861-2800
hsteinberg@springersteinberg.com
*Counsel for Brian Kolfage*

COMES NOW Defendant Brian Kolfage ("Brian"), through Springer and Steinberg, P.C., and moves that this Court modify the Post-indictment Restraining Order (Doc. #64) entered in this matter.

**STATEMENT OF FACTS[1]**

**Background**

Brian is a disabled veteran. In December 2018, he started a "GoFundMe" campaign to raise $1 billion to build a border wall between the United States and Mexico. About one month later, with the assistance of Stephen Bannon, Andrew Badolato, and Timothy Shea, he established We Build the Wall, Inc. ("WBTW"), a Florida non-profit corporation organized under section 501(c)(4) of the Internal

[1]This Statement of Facts is supported by *Declaration of Brian Kolfage*, which was filed contemporaneously with this motion.

Revenue Code. WBTW's mission is to unite private citizens that share a common belief in providing national security for our southern border through the construction, administration, and maintenance of physical barriers inhibiting illegal entry into the United States of America. Approximately $25 million have been raised, and stretches of border wall have already been constructed in Sunland Park, New Mexico and Mission, Texas.

In August 2020, a grand jury indicted Brian, Mr. Bannon, Mr. Badolato, and Mr. Shea. The indictment charges them with Conspiracy to Commit Wire Fraud and Conspiracy to Commit Money Laundering. It alleges that although various representations were made to potential donors on WBTW's website and in other settings that all the money donated would be used to build the border wall and that Brian would not receive a salary, $350,000 of the $25 million in donated funds indirectly made its way to him through entities operated by his codefendants. It further alleges that he used the money he received to pay for home renovations, a boat, a luxury SUV, a golf cart, jewelry, cosmetic surgery, personal tax payments, and credit card debt. WBTW changed its website in January 2020 to state that Brian would receive a salary for the work he performed as an officer and director of WBTW.

**WBTW's Obligation to Fund Brian's Defense**

Before Brian was indicted and before he or anyone associated with WBTW was aware that they were under criminal investigation, WBTW obtained a directors' and officers' liability insurance policy ("D&O Policy") from Ironshore Specialty Insurance Company ("Ironshore"). The D&O Policy provides coverage for WBTW's directors and operators if they face criminal charges related to WBTW's management and operations. Brian is an insured under the D&O Policy, and Ironshore has agreed to pay up to $1 million in the costs and attorney fees he has incurred and will incur in the future. But before Ironshore will pay any benefits under the D&O Policy, WBTW must cover, and demonstrate to Ironshore that it has covered, $125,000 in legal fees and costs incurred in the defense of this case ("insurance retention payment").

After he was arrested, Brian retained Harvey A. Steinberg and his law firm, Springer & Steinberg, P.C. of Denver, Colorado, to represent him. Mr. Steinberg bills $750 an hour. It is plausible that Brian will incur approximately $1 million in costs and attorney fees, and Mr. Steinberg and his firm typically require defendants in Brian's circumstances to deposit a substantial retainer before agreeing to represent them. But relying on the D&O Policy, Mr. Steinberg did not require Brian to provide a retainer deposit.

However, Ironshore has not paid anything for Brian's defense. WBTW cannot make the $125,000 insurance retention payment required under the D&O Policy, or any part of it, though Brian has been promised and understands from WBTW that it would be the source of this required payment. Any funds it would have used to make the payment are subject to the Court's Post-indictment Restraining Order.

## ARGUMENT

### I. The Court should modify the Post-indictment Restraining Order.

The Post-indictment Restraining Order is infringing on Brian's Sixth-amendment right to counsel of choice and should be modified. The Sixth Amendment of the United States Constitution guarantees the right to the assistance of counsel in all criminal prosecutions. U.S. Const. amend. VI. This guarantee includes "the right to be represented by an otherwise qualified attorney whom [a] defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617, 624 (1989). It also prohibits the government from interfering with defendants' ability to finance their defenses with legitimate funds in their possession or provided by third parties. *U.S. v. Stein*, 541 F.3d 130, 155-56 (2nd Cir. 2008).

In *Stein*, the government violated Stein's right to counsel of choice. Stein worked at an accounting firm and was charged criminally for actions he performed at the firm. The firm had a practice that it would pay for its employees' defenses if they were criminally charged based on work-related conduct. Conversely, the government had a policy that authorized prosecutors to consider an employer's payment of an

employee's attorney fees when determining whether to bring charges against the employer. Because of this policy, the employer decided not to follow its practice and declined to pay for Stein's defense. The Second Circuit held the government, through its policy, violated Stein's Sixth-amendment rights because Stein had a reasonable expectation that the employer would pay for his defense and the employer would have paid for his defense with legitimate funds. *Stein*, 541 F.3d at 155-56.

Likewise, the government violated Brian's Sixth-amendment rights by obtaining an overbroad, ex-parte restraining order freezing WBTW's assets. Brian has a reasonable expectation that WBTW will fund his defense. And the restraining order is preventing WBTW from using legitimate funds to provide the funding.

But for the restraining order, WBTW would pay for Brian's defense. It purchased the D&O Policy to protect its directors and officers if they were charged criminally for worked performed for WBTW. The policy requires WBTW to make an insurance retention payment of $125,000, and WBTW would have known and expected to make that payment when it purchased the policy. As WBTW's president, Brian knew about the D&O Policy. He is an insured under it. And Ironshore has agreed to fund his defense under the policy once WBTW makes the insurance retention payment. But WBTW cannot make the payment because of the restraining order. Thus, Brian has a reasonable expectation that WBTW, through the insurance retention payment and the D&O Policy, will fund his defense, but the government has interfered with that expectation by obtaining the restraining order.

The government's interference with Brian's expectation is improper as to any money WBTW obtained after it announced in January 2020 that Brian would be compensated for his work. The pretrial restraint of assets is impermissible unless there is probable cause that they are the proceeds of a crime. *See* 21 U.S.C. § 853; *Luis v. U.S.*, 136 S. Ct. 1083, 1091 (U.S. 2016). Brian and his codefendants are charged with conspiracy to commit wire fraud and conspiracy to commit money laundering. But the Indictment lacks any allegations that Brian and his codefendants engaged in any conduct after January 2020 that would

have generated forfeitable proceeds.

The conduct underlying the conspiracy to commit wire fraud charge, and more particularly any conspiratorial conduct that was capable of newly generated criminal proceeds, ended in January 2020. To convict Brian of this charge, the government must prove Brian agreed with one or more people to commit wire fraud, and one of them committed an overt act in furtherance of the conspiracy. *See* 18 U.S.C. § 1349. This would require proof that they agreed to engage in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [and to] transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice". *See* 18 U.S.C. § 1343. The indictment alleges Brian and his codefendants agreed to obtain donations for WBTW under false pretenses. The only alleged false pretenses were that although they planned on taking some of the money for themselves, they would tell potential donors that Brian would not receive any compensation for his work with WBTW. But the indictment states that, in January 2020, WBTW's website was changed to disclose that Brian would receive a salary. Thus, Brian and his codefendants' alleged agreement to act under false pretenses ended in January 2020, and any donations obtained after WBTW changed its website to disclose Brian's salary were not obtained fraudulently.

Further, any donations obtained after WBTW changed its website are not the proceeds of conspiracy to commit money laundering. To convict Brian of this charge, the government must prove that he agreed with one or more people to conduct or attempt to conduct a financial transaction with property that he knew represents the proceeds of some form of unlawful activity. 18 U.S.C. §§ 1956-1957. Again, after WBTW stated that Brian would receive a salary, any donations received were not obtained fraudulently. Because they were not obtained fraudulently, Brian could not know they were the proceeds of unlawful activity. Thus, any alleged conspiracy to commit money laundering ended in January 2020.

As explained, there is no probable cause that any donations received after January 2020 are the

proceeds of criminal conduct. Any alleged agreement to obtain donations under false pretenses ended when WBTW disclosed that Brian would receive a salary, and any donations received thereafter were lawfully obtained. And because they were lawfully obtained, Brian and his codefendants could not conspire to launder them.

Therefore, the government improperly interfered with Brian's right to counsel by obtaining an overbroad restraining order. The restraining order restrains all WBTW's assets. WBTW's assets can only be restrained if there is probable cause that they are the proceeds of criminal conduct. There is not probable cause any donations received after January 2020 are the proceeds of criminal conduct. And to the extent that it restrains lawfully obtained assets, the restraining order is overbroad, and the government acted improperly by obtaining it.

**II. Request for hearing**

At the very least, the government should be required to prove there is probable cause that donations received after the corrective disclosures in January 2020 are nonetheless proceeds of the charged conspiracies, and Brian respectfully requests that the Court hold an evidentiary hearing for this purpose. Brian acknowledges that this Court and the Second Circuit have yet to opine on when an evidentiary hearing is necessary to resolve a defendant's claim that the government is violating his right to counsel of choice by interfering with his reasonable expectation that his employer will pay for his defense. The Second Circuit has apparently only addressed challenges to pre-indictment restraints of funds that implicate a criminal defendant's Sixth-amendment right to counsel of choice where the defendant seeks to release his *own funds*. In such cases, clearly, the defendant must make some threshold showing to be entitled to an evidentiary hearing. *See U.S. v. Bonventre*, 720 F.3d 126, 130 (2d Cir. 2013); *U.S. v. Monsanto*, 924 F.2d 1186, 1203 (2d 1991). To be precise, when defendants seek to obtain their own funds, defendants are entitled to evidentiary hearings if they "make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice." *Bonventre*, 720 F.3d at

131. If they make this showing, they are entitled to a *Monsanto* adversarial, pre-trial evidentiary hearing requiring the government to prove "there is probable cause to believe that the properties are properly forfeitable."[2] *Bonventre*, 720 F.3d at 130; *see also Kaley v. U.S.*, 571 U.S. 320, 340-41 (2014); *U.S. v. Monsanto*, 924 F.2d 1186, 1203 (2d 1991).

But this Court should not require Brian to make the threshold showing under *Bonventre* because he does not seek to obtain his own funds. Rather, he seeks under *Stein* an order allowing WBTW to make the insurance retention payment necessary to receive benefits under the D&O policy. In *Stein*, there is no indication that Stein was required to make a threshold showing that he lacked sufficient alternative, unrestrained assets to fund counsel of choice. *See Stein*, 541 F.3d at 135-58; 435 F. Supp. 2d 330, 334-82 (S.D.N.Y. 2006). Instead, the government violated Stein's right to counsel of choice by interfering with his reasonable expectation that his employer would pay for his defense. This apparently is the only showing Stein was required to make to receive a hearing. And as shown above, Brian has made a threshold showing that the government violated his right to counsel of choice by obtaining an overbroad restraining order. Thus, Brian is entitled to an evidentiary hearing requiring the government to prove that donations received by WBTW after the January 2020 corrective disclosure have the sufficient nexus to the charged criminal activity to be property that is "properly forfeitable."

However, if this Court determines that Brian must make the threshold showing under *Bonventre*, he is prepared to submit an affidavit ex parte, in camera to show that he lacks sufficient alternative, unrestrained assets to fund counsel of choice.

[2] Prior to 2014, the government was required to prove both "(1) … there is probable cause to believe that the defendant committed the crimes providing a basis for forfeiture; and (2) … there is probable cause to believe that the properties are properly forfeitable." *See Bonventre*, 720 F.3d at 130. But in *Kaley v. U.S.*, the Supreme Court held that defendants cannot challenge the grand jury's probable cause finding in a *Monsanto* hearing. 571 U.S. at 340-41. Thus, the only inquiry during a *Monsanto* hearing is whether there is probable cause that the properties at issue are properly forfeitable.

**CONCLUSION**

The Court should modify the Post-indictment Restraining Order. Brain has a Sixth-amendment right to counsel of choice. This right prohibits the government from interfering with his ability to finance his defense with legitimate funds from WBTW. He has a reasonable expectation that WBTW will fund his defense, but the government is interfering with that expectation through an overbroad restraining order. The restraining order restrains all WBTW's assets, but assets it obtained after January 2020 were lawfully obtained and cannot be restrained. Thus, the restraining order should be modified to restrain only assets obtained before WBTW announced in January 2020 that Brian would receive a salary. Further, Brian is entitled to an evidentiary hearing on this motion because he has made a threshold showing that the government violated his Sixth-amendment right to counsel of choice by obtaining an overbroad restraining order.

WHEREFORE PREMISES CONSIDERED, Defendant Brian Kolfage respectfully requests that this Court modify the Post-indictment Restraining Order entered in this matter so that it does not apply to assets WBTW obtained after it announced in January 2020 that Brian would receive a salary. He further requests that this Court hold an evidentiary hearing on his motion.

Dated: February 2, 2021

Respectfully Submitted

/s/Harvey A. Steinberg
SPRINGER AND STEINBERG, P.C.
1600 Broadway, Suite 1200
Denver CO 80202
(303) 861-2800
hsteinberg@springersteinberg.com
*Counsel for Brian Kolfage*