UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN KOLFAGE,<br>STEPHEN BANNON,<br>ANDREW BADOLATO, and<br>TIMOTHY SHEA<br><br>        *Defendants.* | 20 Cr. 412 (AT) |

**DEFENDANT BRIAN KOLFAGE'S REPLY TO MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO MOTION TO MODIFY POST-INDICTMENT RESTRAINING ORDER**

                 HARVEY A. STEINBERG
                 SPRINGER AND STEINBERG, P.C.
                 1600 Broadway, Suite 1200
                 Denver CO 80202
                 (303) 861-2800
                 hsteinberg@springersteinberg.com
                 *Counsel for Brian Kolfage*

   COMES NOW Defendant Brian Kolfage ("Brian"), through Springer and Steinberg, P.C., and submits this Reply to Memorandum of Law of the United States of America in Opposition to Motion to Modify Post-indictment Restraining Order (Doc. #80).

**ARGUMENT**

**I. The government violated Brian's Sixth-amendment rights through an overbroad, ex-parte restraining order.**

   The government asserts that *Stein* does not support Brian's motion for this Court to modify the post-indictment restraining order. It argues that *Monsanto* and not *Stein* controls because "*Stein* does not apply to funds subject to forfeiture", "it concerned circumstances where there was no dispute that the funds being advanced for employees' legal expenses were not crime proceeds", and "[t]here is no

1

allegation in Kolfage's motion that the Government discouraged We Build the Wall from paying for his counsel." (Doc. #80, pp 6-8). But the government misconstrues Brian's argument, does not actually dispute Brian's argument that the assets WBTW received after it announced he would receive a salary are not subject to forfeiture, and has interfered with Brian's right to receive those assets by obtaining an overbroad, ex-parte restraining order and obdurately refusing to agree to modify it. Further, *Monsanto* controls when defendants seek to obtain their *own* assets to fund their defenses, and *Stein* controls when defendants seek to obtain *third-party* assets to fund them.

The government misconstrues Brian's argument. Brian never argued *Stein* authorizes this Court to release WBTW funds that are subject to forfeiture. Rather, he relies on *Stein* to show he has a well-established, Sixth-amendment "right to defend [him]self using whatever assets [he] has or might reasonably and lawfully obtain … [including] financial donations by others, such as family members and neighbors and employers". *U.S. v. Stein*, 541 F.3d 130, 156 (2nd Cir. 2008). In his motion, he did not ask this Court to unfreeze all WBTW's assets to fund his defense. (Doc. #77, pp 3-6, 8) He only asked that "this Court modify the Post-indictment Restraining Order entered in this matter so that it does not apply to assets WBTW obtained after it announced in January 2020 that Brian would receive a salary". (*Id.* at 8).

Brian limited his request to assets WBTW received after its January 2020 announcement because they are not subject to forfeiture. The pretrial restraint of assets is impermissible unless there is probable cause that they are "traceable to a criminal offense". *Luis v. U.S.*, 136 S. Ct. 1083, 1088-91 (U.S. 2016); *see also* 21 U.S.C. § 853. As the motion explains, there is no probable cause that the assets WBTW received after the January 2020 announcement are traceable to any criminal offense. (Doc. #77, pp 4-6). The only factual basis alleged in the Indictment supporting any criminal charges is that the WBTW website stated that Brian would not receive a salary. But as the Indictment states, "[WBTW's] website was changed to remove any mention of the promise that [Brian] was not being compensated and to add a statement that he would be paid a salary starting in January 2020. [Brian] also stopped receiving secret salary payments

after this date." (Doc. #2, ¶16). So, according to the Indictment, all alleged criminal conduct ceased no later than January 2020. And because all alleged criminal conduct ceased no later than January 2020, all assets WBTW received thereafter are not traceable to a criminal offense. Therefore, all assets received after WBTW announced Brian would receive a salary are not subject to forfeiture.

Indeed, the government does not actually dispute Brian's argument that the assets WBTW received after it announced he would receive a salary are not subject to forfeiture. In its opposition memorandum, it does not proffer a single theory, explanation, or argument to show there is probable cause that those assets are traceable to a criminal offense. (Doc. #80, pp 3-8). This omission is telling. If there were any such theory, explanation or argument, the government surely would have proffered it. And by failing to proffer it, the government "has essentially conceded the point." *See U.S. v. Abdellatif*, 758 F. Supp. 2d 183, 189 (W.D.N.Y. 2010)(internal citations omitted); *see also Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 645-46 (S.D.N.Y. 2015); *BNP v. Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 503-04 (S.D.N.Y. 2013). Thus, the government's failure to even try to meet its burden to show probable cause proves that all assets WBTW received after it changed its website to state that Brian would receive a salary are undisputedly not forfeitable.

Because the assets at issue are undisputedly not forfeitable, the government has interfered with Brian's Sixth-amendment right to counsel. The government has done more than discourage WBTW from paying for Brian's defense. By obtaining the overbroad, ex-parte restraining order the government prevented WBTW from paying for it. The order restrains substantial donations WBTW received between January and August 2020. But, again, there is no basis to argue donations WBTW received after announcing Brian would receive a salary are traceable to any criminal conduct. This is obvious from the face of the Indictment, and it has also been brought to the government's attention multiple times. Yet, the government—without any legal or factual basis—refuses to acknowledge that its position is indefensible and forced Brian to bring this motion, which caused Brian to incur significant attorney fees.

This obdurate stance evidences an intent to hinder Brian's ability to defend himself. And it has been effective. Brian's attorneys have not been paid, and they are on the verge of having to move to withdraw. Thus, the government has clearly interfered with Brian's right to counsel of choice.

Further, the government's argument that *Monsanto* and not *Stein* controls raises a distinction without a difference. True, as the government notes, the *Monsanto* assets were restrained while the *Stein* assets were not. But that is not the salient distinction: If the *Stein* assets had been restrained, the government—just as in *Monsanto*—would have borne the burden to show probable cause that the assets were traceable to a criminal offense. *See* 21 U.S.C. § 853; *Luis*, 136 S. Ct. at 1088-91.

Instead, the salient distinction between *Monsanto* and *Stein* is the Sixth-amendment right recognized in each case. *Monsanto* recognizes that the government cannot interfere with defendants' ability to use *their own assets* to pay for their counsel of choice if the government cannot show probable cause that those assets are traceable to a criminal offense. *U.S. v. Monsanto*, 924 F.2d 1186, 1203 (2d 1991). But *Stein* recognizes that the government cannot interfere with defendants' ability to receive and use *third-party assets* to pay for their counsel of choice. *Stein*, 541 F.3d at 155-56.

This case involves Brian's ability to receive and use the assets of WBTW (a third party) to pay for his counsel of choice. As such, *Stein*—not *Monsanto*—controls. And under *Stein*, the government is violating Brian's Sixth-amendment right to counsel of choice.

Because *Stein* and not *Monsanto* controls, this Court should not require Brian to make the threshold showing articulated in *U.S. v. Bonventre*, 720 F.3d 126 (2d Cir. 2013) before he is entitled to an evidentiary hearing. Stein was not required to show that he lacked sufficient personal assets to fund his own defense before the court found a Sixth-amendment violation. *See Stein*, 541 F.3d at 142-58; *U.S. v. Stein*, 435 F. Supp. 2d 330, 353-82 (S.D.N.Y. 2006). Rather, he was only required to show he had a reasonable expectation that (1) a third party would pay for his defense and that (2) the third party would have paid for his defense with funds not subject to forfeiture. *Stein*, 541 F.3d at 155-56. Brian has made this showing.

4

WBTW purchased the D&O Policy to protect its directors and officers if they were charged criminally for work performed for WBTW and committed to pay the $125,000 insurance retention payment required under the policy. And, as discussed, WBTW would pay the retention payment with funds not subject to forfeiture: the assets it received after it announced Brian would receive a salary. Thus, Brian is entitled to have the restraining order modified to exempt those assets, or at the very least, he is entitled to an evidentiary hearing during which the government must show probable cause that the assets are subject to forfeiture.

## II. If Brian must make the *Bonventre* threshold showing, the Court should either allow him to submit it *ex parte* or prohibit the government from using it against him.

But if the Court holds Brian must make the *Bonventre* threshold showing, it should permit him to submit his affidavit ex-parte or should preclude the government from being able to use any information in the affidavit. Defendants should not be placed in the untenable position of having to choose between exercising their Fifth-amendment protection against self-incrimination and their Sixth-amendment right to counsel. *See U.S. v. Harris*, 707 F.2d 653, 662-63 (2d Cir. 1983); *U.S. v. Branker*, 418 F.2d 378, 380 (2d Cir. 1969). After a diligent search, Brian's counsel has been unable to find any controlling caselaw addressing whether affidavits submitted in support of a request for a *Monsanto* hearing may be submitted ex parte. But multiple circuit courts have addressed whether affidavits submitted in support of a request for appointed counsel may be submitted ex parte, and they have formulated two different approaches. *See U.S. v. Bokhari*, 185 F. Supp. 3d 254, (D. Mass. 2016)(discussing the split between circuits); *U.S. v. Hilsen*, Case 03 Cr. 919 (RWS); 2004 U.S. Dist. LEXIS 20355, *11-14 (S.D.N.Y. October 12, 2004)(unpublished)(same). The Second, Sixth, Seventh, and Tenth Circuits do not require trial courts to allow defendants to submit ex parte financial affidavits, but the government is prohibited from using the statements in the financial affidavits against defendants. *See id.* The Third, Fourth, Eighth, and Ninth Circuits allow ex parte financial affidavits. *See id.*

Notwithstanding the Second Circuit's approach concerning affidavits filed in support of a request

5

for appointed counsel, the Court should allow Brian to submit his affidavit on an ex parte basis. This Court has discretion to provide additional protections to financial affidavits. *See Hilsen*, 2004 U.S. LEXIS 20355 at *24. And defendants seeking appointment of counsel are often allowed to submit their financial affidavits supporting their requests on an ex parte basis under seal. The government has been hyper-critical of Brian's financial circumstances and decisions. Reviewing the Indictment, the government appears to consider every financial decision Brian has made evidence of guilt. Understandably, Brian is hesitant to provide the government with additional information that, although innocent, the government will most likely twist and contort to support the charges filed against him. Thus, he should be allowed to file his financial affidavit on an ex parte basis.

But if it does not allow him to file the affidavit ex parte, the Court should preclude the government from being able to use, directly or derivatively, any statements in the affidavit against Brian. When defendants apply for appointed counsel, the government cannot use any information in their financial affidavits against them. *Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act*, V.E. Although he is not seeking appointed counsel, Brain faces the same dilemma as indigent defendants submitting financial affidavits face in having to choose between his right against self-incrimination and right to assistance of counsel. So, he should be given the same protections indigent defendants receive as to the statements they make in their financial affidavits. Thus, at minimum, this Court should preclude the government from using Brian's statements about his financial situation in support of a *Monsanto* hearing in any way against him in this matter.

## CONCLUSION

The government is violating Brian's Sixth-amendment right to counsel of choice, and the post-indictment restraining order should be modified to restrain only assets obtained before WBTW announced in January 2020 that Brian would receive a salary. Because Brian seeks to receive and use assets from a third party to fund his defense and not his own funds, *Stein*—not *Monsanto*—controls. Assets

WBTW received after its January 2020 announcement are not subject to forfeiture. The government does not actually dispute this point, and by obtaining the restraining order and refusing to agree to modify it to exclude those assets, it is preventing WBTW from paying for Brian's defense. Further, if it requires him to make the threshold showing under *Bonventre*, the Court should either allow Brian to submit a financial affidavit ex parte or preclude the government from being able to use any of the information in the affidavit against him.

Dated:  March 4, 2021                           Respectfully Submitted,

/s/Harvey A. Steinberg
SPRINGER AND STEINBERG, P.C.
1600 Broadway, Suite 1200
Denver CO 80202
(303) 861-2800
hsteinberg@springersteinberg.com
*Counsel for Brian Kolfage*