M4LKKOLP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                              20 CR 412 (AT)
                                          Remote Proceeding

BRIAN KOLFAGE, ANDREW
BADOLATO,

            Defendants.

------------------------------x

UNITED STATES OF AMERICA,

          v.                              22 CR 201 (AT)

BRIAN KOLFAGE,

            Defendant.

------------------------------x

                                    New York, N.Y.
                                    April 21, 2022
                                    3:30 p.m.

Before:

                    HON. ANALISA TORRES,

                                    District Judge

M4LKKOLP

APPEARANCES

DAMIAN WILLIAMS
    Acting United States Attorney for the
    Southern District of New York
ALISON G. MOE
NICOLAS ROOS
ROBERT BENJAMIN SOBELMAN
    Assistant United States Attorneys

CESAR de CASTRO
DAVID DESTEFANO
    Attorneys for Defendant Kolfage

MICHAEL PAUL HEFFERNAN
    Attorney for Defendant Badolato

M4LKKOLP

1              (The Court and all parties appearing remotely)

2              THE COURT:  Good afternoon.

3              We are here in the matter of the United States versus

4    Brian Kolfage and Andrew Badolato, Docket 20 CR 412, and United

5    States versus Kolfage, Docket 22 CR 201.

6              I'd like the court reporter to confirm that he or she

7    is on the line.

8              (Pause)

9              THE COURT:  Counsel, please make your appearances.

10             MR. ROOS:  Good afternoon, your Honor.  Nick Roos, for

11   the United States.  I'm joined off camera on the audio line by

12   my colleagues, Alison Moe and Robert Sobelman, of the United

13   States Attorney's Office.

14             MR. DE CASTRO:  Good afternoon, your Honor.  Cesar

15   De Castro and David DeStefano, for Brian Kolfage, who you can

16   also see is also present.

17             MR. DESTEFANO:  Good afternoon.

18             MR. HEFFERNAN:  Good afternoon, your Honor.  Michael

19   Heffernan, for Andrew Badolato, who is also present.

20             THE COURT:  I actually am not able to see everyone on

21   the screen.  Ms. Marder-Spiro, are you able to see Mr. Kolfage

22   and Mr. Badolato?

23             THE LAW CLERK:  Yes, Judge, I can.

24             Are there too many boxes?  Is that the issue you're

25   having?

M4LKKOLP

1          THE COURT:  I think that may be the issue, yes.  But

2      let me see.

3          MR. ROOS:  Your Honor, I'm no expert at this, but I've

4      found some success if you right click on the person's name and

5      click pin, pin them, then you could, for instance, pin

6      Mr. Kolfage, Mr. Badolato, and their counsel.

7          THE LAW CLERK:  Also, are both Mr. Kolfage's attorneys

8      going to be speaking today?

9          MR. DE CASTRO:  Just Mr. De Castro.

10          THE LAW CLERK:  Okay.  Mr. DeStefano, do you mind

11      going off video?

12          MR. DESTEFANO:  Sure.  No problem.

13          THE LAW CLERK:  Thank you.

14          THE COURT:  I'm sorry, I'm having some difficulty.

15          THE LAW CLERK:  Judge, if you'd like to mute yourself,

16      I can give you a call and give you some options.

17          (Pause)

18          THE COURT:  Sorry for the delay.

19          The videoconference is open to the public, just as a

20      courtroom would be, but as a reminder to those listening in,

21      you're not permitted to record or rebroadcast the proceeding.

22          I understand that both defendants are prepared to

23      consent to this hearing proceeding remotely.

24          Mr. Kolfage, you understand that you have the right to

25      be personally physically present in the courtroom.  After

M4LKKOLP

1   discussing that with your lawyer, did you decide that you

2   wanted to consent to having this matter proceed remotely by

3   videoconference?

4               DEFENDANT KOLFAGE:  Yes, your Honor.

5               THE COURT:  And I have the same question for

6   Mr. Badolato.

7               I can't hear you, sir.

8               I still cannot hear Mr. Badolato.  Can anybody hear

9   him?

10              (Pause)

11              THE COURT:  Are you able to hear me, Mr. Badolato?

12              Okay.  All right.  He's shaking his head yes.  We just

13  have to wait until he gets his audio going.

14              (Pause)

15              DEFENDANT BADOLATO:  Hello.

16              THE COURT:  I can hear you, but there's now an echo.

17              DEFENDANT BADOLATO:  Yeah, there's an echo.  Let me

18  turn off this other --

19              (Pause)

20              DEFENDANT BADOLATO:  Is that better?

21              THE COURT:  Yes.

22              DEFENDANT BADOLATO:  Yes, your Honor, I was advised

23  and attending videoconference, yes, ma'am -- yes, your Honor.

24              THE COURT:  And you understand that you have the right

25  to be personally present, correct?

M4LKKOLP

<table>
<tbody>
<tr><td>1</td><td>DEFENDANT BADOLATO:  Yes, ma'am.  Yes, your Honor.</td></tr>
</tbody>
</table>

1          DEFENDANT BADOLATO:  Yes, ma'am.  Yes, your Honor.

2          THE COURT:  I'm going to pose some questions to

3   Mr. Kolfage and Mr. Badolato.  I will call on each of you

4   individually after I ask the question.

5          I have been informed that Mr. Kolfage and Mr. Badolato

6   want to change their plea and enter a plea of guilty.

7          Is that correct?

8          Mr. Kolfage?

9          DEFENDANT KOLFAGE:  Yes, ma'am.

10          THE COURT:  Mr. Badolato?

11          DEFENDANT BADOLATO:  Yes, your Honor.

12          THE COURT:  Before deciding whether to accept your

13   guilty plea, I'm going to ask you some questions.  It is very

14   important that you answer my questions honestly and completely.

15   The purpose of these proceedings is to make sure that you

16   understand your rights, to decide whether you are pleading

17   guilty of your own free will, and to make sure that you're

18   pleading guilty because you are guilty and not for another

19   reason.

20          Do you understand?

21          Mr. Kolfage?

22          DEFENDANT KOLFAGE:  Yes, your Honor.

23          THE COURT:  Mr. Badolato?

24          DEFENDANT BADOLATO:  Yes, your Honor.

25          THE COURT:  If you don't understand any of my

M4LKKOLP

1      questions, or if you want at any time to consult with your

2      lawyer, please say so, because it is important that you

3      understand every question before you answer.

4               Ms. Marder-Spiro, please swear the defendants.

5               (Defendants sworn)

6               THE COURT:  You understand that you're now under oath,

7      and that if you answer any of my questions falsely, you may be

8      prosecuted for perjury based on any false answers?

9               Mr. Kolfage?

10              DEFENDANT KOLFAGE:  Yes, your Honor, I understand.

11              THE COURT:  Mr. Badolato?

12              DEFENDANT BADOLATO:  Yes, your Honor, I understand.

13              THE COURT:  Mr. Kolfage, how far did you go in school?

14              DEFENDANT KOLFAGE:  Four-year degree, Bachelor's in

15      architecture.

16              THE COURT:  And where was that?

17              DEFENDANT KOLFAGE:  The University of Arizona.

18              THE COURT:  Have you ever been treated or hospitalized

19      for mental illness?

20              DEFENDANT KOLFAGE:  No, your Honor.

21              THE COURT:  Have you ever been addicted to drugs or

22      alcohol?

23              DEFENDANT KOLFAGE:  No, your Honor.

24              THE COURT:  Are you now, or have you recently been,

25      under the care of any kind of doctor or a psychiatrist?

M4LKKOLP

1              DEFENDANT KOLFAGE:  Yes, your Honor.

2              THE COURT:  What is the nature of that care?

3              DEFENDANT KOLFAGE:  It's related to my combat

4    disability.

5              THE COURT:  Are you having to take medication for

6    that?

7              DEFENDANT KOLFAGE:  Yes, your Honor.

8              THE COURT:  Does that medication in any way affect

9    your ability to understand these proceedings?

10             DEFENDANT KOLFAGE:  No, it does not, your Honor.

11             THE COURT:  Have you taken any drugs, medicine, or

12   pills or drunk any alcoholic beverages in the last 24 hours?

13             DEFENDANT KOLFAGE:  Yes, your Honor.

14             THE COURT:  And what was that?

15             DEFENDANT KOLFAGE:  It was medication for -- you need

16   the name of the medication or you just want to know what it's

17   for?

18             THE COURT:  I want to know the nature of the

19   medication.

20             DEFENDANT KOLFAGE:  It's a narcotic for nerve pain

21   related to my amputations of my legs.

22             THE COURT:  Okay.

23             Is there any medication that you're supposed to be

24   taking that you did not take?

25             DEFENDANT KOLFAGE:  No, your Honor.

M4LKKOLP

1          THE COURT:  And is your mind clear today?

2          DEFENDANT KOLFAGE:  Yes, it is.

3          THE COURT:  And you understand what is happening in

4     this proceeding, correct?

5          DEFENDANT KOLFAGE:  Correct, your Honor.

6          THE COURT:  Mr. Badolato, how far did you go in

7     school?

8          DEFENDANT BADOLATO:  I have a four-year degree from

9     St. Thomas of Villanova University in Miami, Florida, in

10    business management.

11         THE COURT:  Have you ever been treated or hospitalized

12    for mental illness?

13         DEFENDANT BADOLATO:  No.

14         THE COURT:  Have you ever been addicted to drugs or

15    alcohol?

16         DEFENDANT BADOLATO:  No, your Honor.

17         THE COURT:  Are you now, or have you recently been,

18    under the care of a doctor or a psychiatrist?

19         DEFENDANT BADOLATO:  Doctor, yes.

20         THE COURT:  For what?

21         DEFENDANT BADOLATO:  I have -- I take heart

22    medications, blood pressure.  And recently I had a hip

23    replacement that I'm getting out of care with them, but still

24    have a sporadic meeting here and there with the hip doctor.

25    And a heart doctor that I take medications for heart, none of

M4LKKOLP

| 1 | them are psychiatric in nature, and I take them regularly.

| 2 |              THE COURT:  Have you taken any drugs, medicine, or

| 3 | pills or drunk any alcoholic beverages in the last 24 hours?

| 4 |              DEFENDANT BADOLATO:  I think, your Honor, I had a

| 5 | drink last night at dinner, approximately 6:00, 7:00 p.m.

| 6 |              THE COURT:  What is the nature of the medication that

| 7 | you take?

| 8 |              DEFENDANT BADOLATO:  Blood pressure, beta blocker,

| 9 | very generic things for heart conditions, of which I have a

| 10 | couple of heart stents that I had a heart attack maybe six,

| 11 | seven years ago.

| 12 |              THE COURT:  Sorry to hear that.

| 13 |              Have you taken those medications in the last 24 hours?

| 14 |              DEFENDANT BADOLATO:  Yes, ma'am.

| 15 |              THE COURT:  And do they affect your ability to follow

| 16 | these proceedings?

| 17 |              DEFENDANT BADOLATO:  No, ma'am.

| 18 |              THE COURT:  And your mind is clear today?

| 19 |              DEFENDANT BADOLATO:  Yes, ma'am.

| 20 |              THE COURT:  And you understand what's happening in

| 21 | this proceeding?

| 22 |              DEFENDANT BADOLATO:  Yes, your Honor.

| 23 |              THE COURT:  I'm now going to ask a few questions to

| 24 | the attorneys for Mr. Kolfage and Mr. Badolato.

| 25 |              I'll start with Mr. De Castro and go, then, to

M4LKKOLP

1    Mr. Heffernan.

2           Have you discussed this matter with your client,

3    Mr. De Castro?

4           MR. DE CASTRO:  Yes, I have, your Honor.

5           THE COURT:  Mr. Heffernan?

6           MR. HEFFERNAN:  Yes, ma'am.

7           THE COURT:  Does your client understand the rights

8    that he would be waiving by pleading guilty?

9           Mr. De Castro?

10          MR. DE CASTRO:  He does, your Honor.

11          THE COURT:  Mr. Heffernan?

12          MR. HEFFERNAN:  Yes, he does, your Honor.

13          THE COURT:  Is your client capable of understanding

14   the nature of the proceedings, Mr. De Castro?

15          MR. DE CASTRO:  Yes, he is.

16          THE COURT:  Mr. Heffernan?

17          MR. HEFFERNAN:  Yes, your Honor.

18          THE COURT:  Do you have any doubt as to your client's

19   competence to plead at this time?

20          Mr. De Castro?

21          MR. DE CASTRO:  No doubts.

22          THE COURT:  Mr. Heffernan?

23          MR. HEFFERNAN:  No doubts, your Honor.

24          THE COURT:  Does the government have any doubt as to

25   the competence of Mr. Kolfage to plead at this time?

M4LKKOLP

1            MR. ROOS:  No, your Honor.

2            THE COURT:  Does the government have any doubt as to

3      the competence of Mr. Badolato to plead at this time?

4            MR. ROOS:  No, your Honor.

5            THE COURT:  On the basis of Mr. Kolfage's and

6      Mr. Badolato's responses to my questions, my observations of

7      their demeanor right now, and the representations of counsel, I

8      find that the defendants are fully competent to enter an

9      informed plea of guilty at this time.

10           Mr. Kolfage, have you received a copy of the

11     indictment in Docket 20 CR 412?

12           DEFENDANT KOLFAGE:  Yes, your Honor.

13           THE COURT:  And have you received a copy of the

14     superseding indictment in Docket 22 CR 201?

15           DEFENDANT KOLFAGE:  Yes, your Honor.

16           THE COURT:  Have you read both of those documents?

17           DEFENDANT KOLFAGE:  I have read both of them, your

18     Honor.

19           THE COURT:  Do you want me to read them to you now in

20     open court, or do you waive their public reading?

21           DEFENDANT KOLFAGE:  I waive their public reading, your

22     Honor.

23           THE COURT:  You understand that you're charged, in

24     Docket 20 CR 412, with conspiracy to commit wire fraud, in

25     violation of 18, United States Code, Section 1349, and

M4LKKOLP

1   conspiracy to commit money laundering, in violation of 18,

2   United States Code, Section 1956(h)?

3        DEFENDANT KOLFAGE:  I understand, your Honor.

4        THE COURT:  And do you understand that you're charged,

5   in Docket 22 CR 201, with two counts of making false statements

6   on a tax return, in violation of 26, United States Code,

7   Section 72061, and 18, United States Code, Section 2?

8        DEFENDANT KOLFAGE:  Yes, your Honor.

9        THE COURT:  And that you're also charged with wire

10  fraud in connection with filing a false tax return, in

11  violation of 18, United States Code, Sections 1343 and 2?

12       DEFENDANT KOLFAGE:  Yes, your Honor.

13       THE COURT:  Mr. Badolato, have you received a copy of

14  the indictment in Docket 20 CR 412?

15       DEFENDANT BADOLATO:  Yes, your Honor.

16       THE COURT:  And you've read it?

17       DEFENDANT BADOLATO:  Yes, your Honor.

18       THE COURT:  Do you want me to read it to you now in

19  open court here, or do you want to waive its public reading?

20       DEFENDANT BADOLATO:  I would like to waive its public

21  reading, your Honor.

22       THE COURT:  Do you understand that you're charged with

23  conspiracy to commit wire fraud, in violation of 18, United

24  States Code, Section 1349?

25       DEFENDANT BADOLATO:  Yes, your Honor.

M4LKKOLP

1          THE COURT:  And conspiracy to commit money laundering,

2     in violation of 18, United States Code, Section 1956(h)?

3          DEFENDANT BADOLATO:  Yes, your Honor.

4          THE COURT:  Have you had enough time and opportunity

5     to discuss your case with your attorney, Mr. Kolfage?

6          DEFENDANT KOLFAGE:  Yes, your Honor.

7          THE COURT:  Mr. Badolato?

8          DEFENDANT BADOLATO:  Yes, your Honor.

9          THE COURT:  Have you discussed with your attorney all

10    of the facts about your involvement in these matters?

11         Mr. Kolfage?

12         DEFENDANT KOLFAGE:  Yes, I have, your Honor.

13         THE COURT:  Mr. Badolato?

14         DEFENDANT BADOLATO:  Yes, your Honor.

15         THE COURT:  Has your attorney told you the

16    consequences of pleading guilty?

17         Mr. Kolfage?

18         DEFENDANT KOLFAGE:  Yes, your Honor.

19         THE COURT:  Mr. Badolato?

20         DEFENDANT BADOLATO:  Yes, your Honor.

21         THE COURT:  And you're satisfied with your attorney's

22    representation of you?

23         Mr. Kolfage?

24         DEFENDANT KOLFAGE:  Yes, your Honor.

25         THE COURT:  Mr. Badolato?

M4LKKOLP

1              DEFENDANT BADOLATO:  Yes, your Honor.

2              THE COURT:  I'm going to explain certain

3    constitutional rights that you have.  These are rights that you

4    will be giving up if you enter a guilty plea.  Please listen

5    carefully to what I am about to say, and if you don't

6    understand something, stop me, and your attorney or I will

7    explain the matter more fully.

8              Under the Constitution and laws of the United States,

9    you have a right to plead not guilty to the charges.  Do you

10   understand?

11             Mr. Kolfage?

12             DEFENDANT KOLFAGE:  Yes, I do, your Honor.

13             THE COURT:  Mr. Badolato?

14             DEFENDANT BADOLATO:  Yes, your Honor.

15             THE COURT:  If you did plead not guilty, you would be

16   entitled, under the Constitution, to a speedy and public trial

17   by a jury.  Do you understand?

18             Mr. Kolfage?

19             DEFENDANT KOLFAGE:  Yes, I do, your Honor.

20             THE COURT:  Mr. Badolato?

21             DEFENDANT BADOLATO:  Yes, I understand, your Honor.

22             THE COURT:  At the trial, you would be presumed to be

23   innocent, and the government would be required to prove you

24   guilty beyond a reasonable doubt before you could be found

25   guilty.  That means that you would not have to prove that you

M4LKKOLP

1   were innocent, and you could not be convicted unless a jury of

2   12 people agreed unanimously that you are guilty beyond a

3   reasonable doubt.

4           Do you understand?

5           Mr. Kolfage?

6           DEFENDANT KOLFAGE:  Yes, your Honor.

7           THE COURT:  Mr. Badolato?

8           DEFENDANT BADOLATO:  Yes, your Honor.

9           THE COURT:  At the trial, and at every stage of your

10  case, you would be entitled to be represented by a lawyer, and

11  if you could not afford one, one would be appointed at public

12  expense, free of charge.

13          Do you understand?

14          Mr. Kolfage?

15          DEFENDANT KOLFAGE:  Yes, your Honor.

16          THE COURT:  Mr. Badolato?

17          DEFENDANT BADOLATO:  Yes, your Honor.

18          THE COURT:  During a trial, the witnesses for the

19  prosecution would have to come to court and testify in your

20  presence, where you could see and hear them and your lawyer

21  could cross-examine them.  And, if you wanted, your lawyer

22  could offer evidence on your behalf.  You would be able to use

23  the Court's power to compel witnesses to come to court to

24  testify in your defense, even if they did not want to come.

25          Do you understand?

M4LKKOLP

1              Mr. Kolfage?

2              DEFENDANT KOLFAGE:  Yes, your Honor.

3              THE COURT:  Mr. Badolato?

4              DEFENDANT BADOLATO:  Yes, your Honor.

5              THE COURT:  At trial, you would have the right to

6      testify if you wanted to, but you would also have the right not

7      to testify, and if you chose not to testify, that could not be

8      used against you in any way.  No inference or suggestion of

9      guilt could be made from the fact that you did not testify.

10             Do you understand?

11             Mr. Kolfage?

12             DEFENDANT KOLFAGE:  Yes, your Honor.

13             THE COURT:  Mr. Badolato?

14             DEFENDANT BADOLATO:  Yes, your Honor.

15             THE COURT:  If you were convicted at trial, you would

16     have the right to appeal that verdict to a higher court.  Do

17     you understand?

18             Mr. Kolfage?

19             DEFENDANT KOLFAGE:  Yes, your Honor.

20             THE COURT:  Mr. Badolato?

21             DEFENDANT BADOLATO:  Yes, your Honor.

22             THE COURT:  As I said, you have the right to plead not

23     guilty.  Even right now, even as you sit here for the purpose

24     of entering a guilty plea, you have the right to change your

25     mind, persist in your not-guilty plea, and go to trial.  But if

M4LKKOLP

```
1    you did plead guilty, and I accept your plea, you will be

2    giving up your right to trial and all the other rights that go

3    with it that I have just described.  If you plead guilty, there

4    will be no trial.  All that will remain to be done is to impose

5    sentence.  I will enter a judgment of guilty and sentence you

6    on the basis of your guilty plea after considering whatever

7    submissions I get from you, your lawyer, and the government, as

8    well as a presentence report prepared by the probation

9    department.

10             Do you understand?

11             Mr. Kolfage?

12             DEFENDANT KOLFAGE:  Yes, your Honor, I understand.

13             THE COURT:  Mr. Badolato?

14             DEFENDANT BADOLATO:  Yes, I understand, your Honor.

15             THE COURT:  If you plead guilty, do you understand

16   that you will also have to give up your right not to

17   incriminate yourself because I will ask you questions about

18   what you did in order to satisfy myself that you're guilty as

19   charged.

20             Do you understand?

21             Mr. Kolfage?

22             DEFENDANT KOLFAGE:  Yes, your Honor.

23             THE COURT:  Mr. Badolato?

24             DEFENDANT BADOLATO:  Yes, your Honor.

25             THE COURT:  Do you understand each and every one of
```

M4LKKOLP

1    these rights?

2          Mr. Kolfage?

3          DEFENDANT KOLFAGE:  Yes, your Honor.

4          THE COURT:  Mr. Badolato?

5          DEFENDANT BADOLATO:  Yes, your Honor.

6          THE COURT:  Are you willing to give up your right to a

7    trial and the other rights that I have just discussed with you?

8          Mr. Kolfage?

9          DEFENDANT KOLFAGE:  Yes, your Honor.

10         THE COURT:  Mr. Badolato?

11         DEFENDANT BADOLATO:  Yes, your Honor.

12         THE COURT:  Mr. Kolfage and Mr. Badolato, you said

13   before that you have read the indictments containing the

14   charges against you.  I understand that you both intend to

15   plead guilty to Count One of the indictment in Docket 20 CR

16   412, wire fraud conspiracy.

17         Is that right?

18         Mr. Kolfage?

19         DEFENDANT KOLFAGE:  Yes, your Honor.

20         THE COURT:  Mr. Badolato?

21         DEFENDANT BADOLATO:  Yes, your Honor.

22         THE COURT:  I also understand that Mr. Kolfage intends

23   to plead guilty to Counts One, Two, and Three of the

24   superseding indictment in an additional case under Docket 22 CR

25   201, which includes making false statements on a tax return and

M4LKKOLP

1   wire fraud.

2           Is that correct, Mr. Kolfage?

3           DEFENDANT KOLFAGE:  Yes, your Honor.

4           THE COURT:  I will start with Docket 20 CR 412.

5           AUSA Roos, would you please state the elements of the

6   offense in question.

7           MR. ROOS:  Yes, your Honor.

8           For Count One of Indictment 20 CR 412, which charges

9   both defendants with conspiracy to commit wire fraud, in

10  violation of Title 18, United States Code, Section 1349, these

11  are the following elements:

12          One, that two or more persons entered into an unlawful

13  agreement to violate specified laws of the United States

14  prohibiting wire fraud;

15          And, second, that the defendant in question knowingly

16  and willfully entered into the agreement.

17          The crime of wire fraud, in turn, has three elements:

18          First, the existence of a scheme or artifice to

19  defraud or to obtain money or property by means of materially

20  false and fraudulent pretenses, representations, or promises;

21          Second, the defendant participated in the scheme or

22  artifice to defraud with knowledge of its fraudulent

23  (unintelligible) the intent to defraud;

24          And, finally, in the execution of the scheme, the

25  defendant used or caused to be used interstate or foreign

M4LKKOLP

1  wires.

2          And, your Honor, now I'll move on --

3          THE COURT:  If you'll just hold off for a moment.

4          (Pause)

5          MR. ROOS:  Your Honor, if I may?

6          THE COURT:  Go ahead.

7          MR. ROOS:  Second, the defendant participated in the

8  scheme or artifice to defraud with knowledge of its fraudulent

9  nature and with the specific intent to defraud;

10         And third, finally, in the execution of the scheme,

11 the defendant used or caused to be used interstate or foreign

12 wires.

13         THE COURT:  So, with respect to Docket 20 CR 412, do

14 you understand that if you were to go to trial, the defendant

15 would have to prove all of those elements beyond a reasonable

16 doubt?

17         Mr. Kolfage?

18         DEFENDANT KOLFAGE:  Yes, your Honor.

19         THE COURT:  Mr. Badolato?

20         DEFENDANT BADOLATO:  Yes, your Honor.

21         THE COURT:  I will now turn to Docket 22 CR 201.

22         AUSA Roos, would you please state the elements of the

23 offense in question?

24         MR. ROOS:  Yes, your Honor.

25         So Count One and Three of the Superseding Indictment

M4LKKOLP

22 CR 2201, which was transferred from the Northern District of Florida, charges the Defendant Brian Kolfage with filing a false tax return, in violation of Title 26, United States Code, Section 7206, Subsection (1).

The elements of filing a false tax return are:

One, that the defendant made or caused to be made and subscribed a return, statement, or other document which was false as to a material matter for the year 2019;

Second, the return, statement, or other document contained a written declaration that it was made under penalties of perjury;

Third, the defendant knew the return, statement, or other document was false as to a material matter;

And, fourth, the defendant falsely subscribed to the return, statement, or other document willfully and with the specific intent to violate the law.

The defendant is also charged in Count Two of Superseding Indictment 22 CR 201 with wire fraud in connection with his filing of a false and fraudulent tax return, in violation of Title 18, United States Code, Sections 1343 and 2.

The elements of wire fraud are the same as those that I stated previously, but, if I may:

First, the existence of a scheme or artifice to defraud or to obtain money or property by means of materially false and fraudulent pretenses, representations, or promises;

M4LKKOLP

1          Second, the defendant participated in a scheme or

2     artifice to defraud with knowledge of its fraudulent nature and

3     with specific intent to defraud;

4          And, finally, third, in the execution of the scheme,

5     the defendant used or caused to be used interstate or foreign

6     wires.

7          For all these charges, the government would be

8     required to prove venue by a preponderance of the evidence.

9     For the first indictment that I mentioned, that would be proved

10    by preponderance of venue in the Southern District of New York,

11    and for what is now Superseding Indictment 22 CR 201, which

12    came from the Northern District of Florida, that would be

13    establishing venue in that district by a preponderance of the

14    evidence.

15         THE COURT:  Mr. Kolfage, with respect to Docket 22 CR

16    201, you just heard Mr. Roos state the elements of those

17    crimes.  Do you recall that?

18         DEFENDANT KOLFAGE:  Yes, your Honor.

19         THE COURT:  And do you understand that if you were to

20    go to trial, the government would have to prove those elements

21    beyond a reasonable doubt except for venue, which would have to

22    be proved by a preponderance of the evidence?

23         DEFENDANT KOLFAGE:  Yes, your Honor.

24         THE COURT:  I'm going to return, for a moment, to

25    Docket 20 CR 412, which applies to both Mr. Kolfage and

M4LKKOLP

1    Mr. Badolato.

2            Do you both understand that if you were to go to

3    trial, the government would have to prove the elements beyond a

4    reasonable doubt except for venue, which has to be proven by a

5    preponderance of the evidence?

6            Mr. Kolfage?

7            DEFENDANT KOLFAGE:  Yes, your Honor.

8            THE COURT:  And Mr. Badolato?

9            DEFENDANT BADOLATO:  Yes, I understand, your Honor.

10           THE COURT:  Now I'm going to tell you about the

11   maximum penalties.  The maximum penalty means the most that

12   could possibly be imposed.  It doesn't mean that's what you

13   necessarily will receive, but you have to understand that by

14   pleading guilty, you are exposing yourself to the possibility

15   of receiving any combination of punishments up to the maximums

16   that I'm about to describe.

17           Do you understand?

18           Mr. Kolfage?

19           DEFENDANT KOLFAGE:  Yes, your Honor.

20           THE COURT:  Mr. Badolato?

21           DEFENDANT BADOLATO:  Yes, your Honor.

22           THE COURT:  I will start with Docket 20 CR 412.

23           First, with regard to your liberty, the maximum term

24   of imprisonment for Count One of the indictment in Docket 20 CR

25   412, which pertains to both Mr. Kolfage and Mr. Badolato, is 20

M4LKKOLP

```
 1    years, which could be followed by up to three years of

 2    supervised release.  Supervised release means that if you're

 3    sentenced to prison, after you're released, you'll be subject

 4    to supervision by the probation department.  There will be

 5    rules of supervised release that you will have to follow, and

 6    if you violate those rules, you can be returned to prison

 7    without a jury trial to serve additional time, even beyond your

 8    original sentence.

 9              Do you understand, Mr. Kolfage?

10              DEFENDANT KOLFAGE:  Yes, your Honor.

11              THE COURT:  Mr. Badolato?

12              DEFENDANT BADOLATO:  Yes, your Honor.

13              THE COURT:  You should also understand that parole has

14    been abolished in the federal system, and that if you're

15    sentenced to prison, you will not be released early on parole,

16    although there is limited opportunity to earn credit for good

17    behavior.

18              Do you understand?

19              Mr. Kolfage?

20              DEFENDANT KOLFAGE:  Yes, your Honor.

21              THE COURT:  Mr. Badolato?

22              DEFENDANT BADOLATO:  Yes, your Honor.

23              THE COURT:  I will now turn to Docket 22 CR 201, which

24    pertains only to Mr. Kolfage.

25              The maximum term of imprisonment for Counts One and
```

M4LKKOLP

Three of the superseding indictment is three years, which could
be followed by up to one year of supervised release.

The maximum term of imprisonment for Count Two of the
superseding indictment, which pertains only to Mr. Kolfage, is
20 years, which could be followed by up to three years of
supervised release.

In addition to these restrictions on your liberty, the
maximum punishment for each count also includes certain
financial penalties.

For wire fraud conspiracy in Count One of the
indictment in Docket 20 CR 412, which pertains to both
defendants, and wire fraud in Count Two of the superseding
indictment in Docket 22 CR 201, which pertains only to
Mr. Kolfage, the maximum allowable fine is $250,000 or twice
the gain you received from the crime or twice the loss to any
victims, whichever is greater.

For filing a false tax return in Counts One and Three
of the superseding indictment, in Docket 22 CR 201, which
pertains only to Mr. Kolfage, the maximum allowable fine is
$100,000 or twice the gain you received from the crime or twice
the loss to any victims, whichever is greater.

I'm also required to impose a mandatory special
assessment of $100 on each count of conviction.

In addition, I must order restitution to any persons
or entities injured as a result of your criminal conduct.

M4LKKOLP

1          The indictment in Docket 20 CR 412, which pertains to

2     both defendants, also includes a forfeiture allegation, which

3     I'm going to read to you now.

4          As a result of committing the offense alleged in Count

5     One of this indictment, you, the defendants, shall forfeit to

6     the United States, pursuant to 18, United States Code,

7     Section 981(a)(1)(C) and 28, United States Code, Section

8     2461(c), any and all property, real and personal, that

9     constitutes or is derived from proceeds traceable to the

10    commission of said offense, including, but not limited to, a

11    sum of money in United States currency representing the amount

12    of proceeds traceable to the commission of said offense.

13         The forfeiture allegation also requires you to forfeit

14    your interest in certain specific property, including numerous

15    bank accounts.

16         Mr. Kolfage, do you understand the maximum penalties

17    for Count One of the indictment in 20 CR 412, and Counts One,

18    Two, and Three of the superseding indictment in Docket 22 CR

19    201?

20         DEFENDANT KOLFAGE:  Yes, your Honor.

21         THE COURT:  And do you understand that it is possible,

22    taking all the counts together in both dockets, that you could

23    be sent to prison for 46 years?

24         DEFENDANT KOLFAGE:  Yes, your Honor.

25         THE COURT:  Mr. Badolato, do you understand the

M4LKKOLP

maximum penalties for Count One of the indictment in Docket 20
CR 412?

          DEFENDANT BADOLATO:  Yes, your Honor.

          THE COURT:  Do you understand that you could be sent
to prison for up to 20 years?

          DEFENDANT BADOLATO:  Yes, I do, your Honor.

          THE COURT:  Please understand, I am just telling you
about the punishments that are part of the sentence.  Being
convicted of a felony, even if by a plea of guilty, may have
other consequences.  If you are a U.S. citizen, you may lose
certain valuable civil rights, to the extent that you have them
now, as a result of your guilty plea, such as the right to
vote, the right to hold public office, the right to serve on a
jury, and the right to possess a firearm.

          If you are not a U.S. citizen, you may be deported
from the United States as a result of your guilty plea, and, in
certain circumstances, that deportation may be mandatory.

          In imposing sentence, federal judges are required to
consider the recommendations of the federal sentencing
guidelines.  The guidelines are a complicated set of rules for
determining an appropriate sentence.  Judges must pay attention
to the sentencing guidelines in determining a sentence, but, in
the end, the judge is required to give the sentence that she
believes best satisfies the purposes of the criminal law, even
if that is higher or lower than the guideline recommendation.

M4LKKOLP

1          Have you discussed the sentencing guidelines with your

2     attorney?

3          Mr. Kolfage?

4          DEFENDANT KOLFAGE:  Yes, your Honor.

5          THE COURT:  Mr. Badolato?

6          DEFENDANT BADOLATO:  Yes, your Honor.

7          THE COURT:  And you understand that the guidelines are

8     only recommendations to the Court?

9          Mr. Kolfage?

10          DEFENDANT KOLFAGE:  Yes, your Honor.

11          THE COURT:  Mr. Badolato?

12          DEFENDANT BADOLATO:  Yes, your Honor.

13          THE COURT:  I understand that there is a written plea

14     agreement that each defendant has signed; is that correct?

15          Mr. Kolfage?

16          DEFENDANT KOLFAGE:  Yes, your Honor.

17          THE COURT:  Mr. Badolato?

18          DEFENDANT BADOLATO:  Yes, your Honor.

19          THE COURT:  I have before me the letter plea agreement

20     for Mr. Kolfage, dated March 30, 2022, from Assistant United

21     States Attorneys Alison Moe, Nicolas Roos, and Robert Sobelman

22     to Mr. Kolfage's attorneys, Cesar De Castro and David

23     DeStefano.

24          Mr. Kolfage, did you sign that agreement?

25          DEFENDANT KOLFAGE:  Yes, your Honor.

M4LKKOLP

THE COURT:  I also have before me the letter plea
agreement for Mr. Badolato, dated March 30, 2022, from
Assistant United States Attorneys Alison Moe, Nicolas Roos, and
Robert Sobelman to Mr. Badolato's attorneys, David Stein,
Michael Heffernan, and Kelly Kramer.

Mr. Badolato, did you sign the agreement?

DEFENDANT BADOLATO:  Yes, I did, your Honor.

THE COURT:  Did you read your plea agreement before
you signed it?

Mr. Kolfage?

DEFENDANT KOLFAGE:  Yes, your Honor.

THE COURT:  Mr. Badolato?

DEFENDANT BADOLATO:  Yes, I did, your Honor.

THE COURT:  Did you discuss it with your attorney
before you signed it?

DEFENDANT BADOLATO:  Yes, your Honor.

THE COURT:  Mr. Kolfage?

DEFENDANT KOLFAGE:  Yes, your Honor.

THE COURT:  And Mr. Badolato?

DEFENDANT BADOLATO:  Yes, I did, your Honor.

THE COURT:  I realize that it is a long document, it
contains some technical legal language, but after discussing it
with your lawyer, did you understand the terms of the
agreement?

Mr. Kolfage?

M4LKKOLP

1        DEFENDANT KOLFAGE:  Yes, your Honor.

2        THE COURT:  Mr. Badolato?

3        DEFENDANT BADOLATO:  Yes, I do, your Honor.

4        THE COURT:  It appears that both defendants and the

5   government have agreed on the appropriate calculation of their

6   sentences under the guidelines.  Is that right?

7        Mr. Kolfage?

8        DEFENDANT KOLFAGE:  Yes, your Honor.

9        THE COURT:  Mr. Badolato?

10        DEFENDANT BADOLATO:  Yes, your Honor.

11        THE COURT:  As to Mr. Kolfage, the agreement is that

12   the appropriate guideline sentencing range is 51 to 63 months'

13   imprisonment, with a fine of 20,000 to 200,000 dollars.

14        As to Mr. Badolato, the sentencing range is 41 to 51

15   months' imprisonment, with a fine range of 15,000 to 150,000.

16        That means that pursuant to your agreement, neither of

17   you, nor the government, are allowed to argue to me for a

18   different guideline calculation than the one in your respective

19   agreements, although you may seek a sentence outside that

20   range.

21        Do you understand?

22        Mr. Kolfage?

23        DEFENDANT KOLFAGE:  Yes, your Honor.

24        THE COURT:  Mr. Badolato?

25        DEFENDANT BADOLATO:  Yes, your Honor.

M4LKKOLP

1              THE COURT:  You must understand that these agreements

2      do not bind me in any way.  I'm required to make my own

3      independent calculation under the sentencing guidelines, and

4      then to impose a sentence based on what I believe is the

5      appropriate sentence for you, even if that sentence is

6      different from the one in this agreement.

7              You understand?

8              Mr. Kolfage?

9              DEFENDANT KOLFAGE:  Yes, your Honor.

10             THE COURT:  Mr. Badolato?

11             DEFENDANT BADOLATO:  Yes, your Honor.

12             THE COURT:  I'm not saying that I will come up with

13     any range different from the one that you agreed to with the

14     government, but if I do, then I will not let you withdraw your

15     plea, even if the range I determine is higher than the one you

16     agreed to with the government.

17             Do you understand?

18             Mr. Kolfage?

19             DEFENDANT KOLFAGE:  Yes, your Honor.

20             THE COURT:  Mr. Badolato?

21             DEFENDANT BADOLATO:  Yes, I understand, your Honor.

22             THE COURT:  Mr. Kolfage, do you understand that under

23     the agreement, you're giving up your right to appeal or

24     otherwise challenge your sentence so long as I sentence you to

25     63 months of imprisonment or less?

M4LKKOLP

1        DEFENDANT KOLFAGE:  Yes, your Honor.

2        THE COURT:  You are, similarly, giving up your right

3  to appeal any term of supervised release less than the

4  statutory maximum, any fine equal to or below $200,000, and any

5  forfeiture or restitution amounts equal to or below

6  $17,872,106.

7        DEFENDANT KOLFAGE:  Yes, your Honor.

8        THE COURT:  If I sentence you to more than 63 months'

9  imprisonment for any reason, you have the right to appeal that

10  sentence.  So long as I sentence you to 63 months' imprisonment

11  or less, you may not appeal your sentence under the agreement.

12        Do you understand?

13        DEFENDANT KOLFAGE:  Yes, your Honor.

14        THE COURT:  Mr. Badolato, do you understand that,

15  under the agreement, you're giving up your right to appeal or

16  otherwise challenge your sentence so long as I sentence you to

17  51 months of imprisonment or less?

18        DEFENDANT BADOLATO:  Yes, I understand, your Honor.

19        THE COURT:  Similarly, you're giving up your right to

20  appeal any term of supervised release less than the statutory

21  maximum, any fine equal to or below $150,000, and any

22  forfeiture or restitution amounts equal to or below $1,414,368.

23        DEFENDANT BADOLATO:  Yes, I understand, your Honor.

24        THE COURT:  If I sentence you to more than 51 months'

25  imprisonment for any reason, you have the right to appeal that

M4LKKOLP

sentence, but so long as I sentence you to 51 months of

imprisonment or less, you may not appeal your sentence under

the agreement.

You understand?

DEFENDANT BADOLATO:  Yes, I do, your Honor.

THE COURT:  Do you understand that, under your

respective agreements, that you're giving up the right to

withdraw your plea or challenge your conviction on a few

specific grounds, which I am about to describe?

First, under the agreement, you're giving up your

right to withdraw your plea or challenge your conviction on the

grounds that the government has failed to produce the following

categories of material as of the date of the signing of the

agreement, any material that it was required to produce during

discovery, statements of any government witness relating to the

subject matter about which the witness would be expected to

testify, material that could be used to impeach or attack the

testimony of any government witness, material favorable to you

that could cast doubt on your guilt, reduce your sentence,

other than information establishing your factual innocence.

Do you understand?

Mr. Kolfage?

DEFENDANT KOLFAGE:  Yes, your Honor.

THE COURT:  Mr. Badolato?

DEFENDANT BADOLATO:  Yes, your Honor.

M4LKKOLP

1          THE COURT:  Second, under the agreement, you're also

2     giving up the right to withdraw your guilty plea and the right

3     to challenge your conviction or sentence based on any actual or

4     perceived adverse immigration consequences, including

5     deportation, resulting from the guilty plea and conviction.

6          So, for example, if you are deported following your

7     guilty plea and conviction, or if the government later turns

8     over material that would tend to cast doubt on your guilt other

9     than material that establishes your innocence, you will not be

10    able to withdraw your plea or challenge your conviction on

11    those grounds.

12          Do you understand?

13          Mr. Kolfage?

14          DEFENDANT KOLFAGE:  Yes, your Honor.

15          THE COURT:  Mr. Badolato?

16          DEFENDANT BADOLATO:  Yes, your Honor.

17          THE COURT:  I also have a proposed consent order of

18    forfeiture for each defendant attached as Exhibit A to the

19    respective plea agreements.

20          I am going to mark Mr. Kolfage's plea agreement and

21    consent order as Court Exhibit No. 1 and Mr. Badolato's plea

22    agreement and consent order as Court Exhibit No. 2.

23          Did you sign the consent order of forfeiture?

24          Mr. Kolfage?

25          DEFENDANT KOLFAGE:  Yes, your Honor.

M4LKKOLP

1          THE COURT:  Mr. Badolato?

2          DEFENDANT BADOLATO:  Yes, your Honor.

3          THE COURT:  Did you read and discuss it with your

4   attorneys?

5          Mr. Kolfage?

6          DEFENDANT KOLFAGE:  Yes, your Honor.

7          THE COURT:  Mr. Badolato?

8          DEFENDANT BADOLATO:  Yes, your Honor.

9          THE COURT:  Mr. Kolfage, do you understand that

10   pursuant to the consent order, you are consenting to the entry

11   of a money judgment in the amount of $17,872,106 in United

12   States currency, representing the amount of proceeds traceable

13   to the offense charged in Count One of the indictment in Docket

14   20 CR 412 that you personally obtained?

15          DEFENDANT KOLFAGE:  Yes, your Honor.

16          THE COURT:  Mr. Badolato, do you understand that

17   pursuant to the consent order, you are consenting to the entry

18   of a money judgment in the amount of $1,414,368 in United

19   States currency, representing the amount of proceeds traceable

20   to the offense charged in Count One of the indictment in Docket

21   20 CR 412 that you personally obtained?

22          DEFENDANT BADOLATO:  Yes, I understand, your Honor.

23          THE COURT:  And you consent to the forfeiture order?

24          DEFENDANT BADOLATO:  Yes, I do, your Honor.

25          THE COURT:  Did you willingly sign the plea agreement?

M4LKKOLP

1          Mr. Kolfage?

2          DEFENDANT KOLFAGE:  Yes, your Honor.

3          THE COURT:  Mr. Badolato?

4          DEFENDANT BADOLATO:  Yes, your Honor.

5          THE COURT:  Did anybody force you or bribe you to sign

6    the agreement?

7          Mr. Kolfage?

8          DEFENDANT KOLFAGE:  No, your Honor.

9          THE COURT:  Mr. Badolato?

10         DEFENDANT BADOLATO:  No, your Honor.

11         THE COURT:  Does the written plea agreement constitute

12   your complete and total understanding of the agreement between

13   you and the government?

14         Mr. Kolfage?

15         DEFENDANT KOLFAGE:  Yes, your Honor.

16         THE COURT:  Mr. Badolato?

17         DEFENDANT BADOLATO:  Yes, your Honor.

18         THE COURT:  And do you understand that if your

19   attorney or anyone else has attempted to predict what your

20   sentence will be, that their prediction could be wrong?

21         Mr. Kolfage?

22         DEFENDANT KOLFAGE:  Yes, your Honor.

23         THE COURT:  Mr. Badolato?

24         DEFENDANT BADOLATO:  Yes, your Honor.

25         THE COURT:  I'm asking you this because no one — not

M4LKKOLP

1   your attorney or the prosecutor, not even I — can be sure now

2   what your sentence will be because that sentence cannot be

3   determined until I've received the presentence report and until

4   I have decided what is the correct calculation of the range

5   recommended by the sentencing guidelines and whether there is

6   any basis for not following the guideline.

7           Even if your sentence is different from what your

8   attorney or anyone else has predicted, even if it's different

9   from what you hope for or expect, once you've pleaded guilty,

10  you will not be allowed to withdraw your plea.

11          Do you understand?

12          Mr. Kolfage?

13          DEFENDANT KOLFAGE:  Yes, your Honor.

14          THE COURT:  Mr. Badolato?

15          DEFENDANT BADOLATO:  Yes, I understand, your Honor.

16          THE COURT:  Other than what is contained in the plea

17  agreement, has anyone made any promise or offered you any

18  inducement to get you to plead guilty?

19          Mr. Kolfage?

20          DEFENDANT KOLFAGE:  No, your Honor.

21          THE COURT:  Mr. Badolato?

22          DEFENDANT BADOLATO:  No, your Honor.

23          THE COURT:  Has anyone threatened, bribed, or forced

24  you to plead guilty?

25          Mr. Kolfage?

M4LKKOLP

1          DEFENDANT KOLFAGE:  No, your Honor.

2          THE COURT:  Mr. Badolato?

3          DEFENDANT BADOLATO:  No, your Honor.

4          THE COURT:  Has anyone made a promise to you as to

5   what your sentence will be?

6          Mr. Kolfage?

7          DEFENDANT KOLFAGE:  No, your Honor.

8          THE COURT:  Mr. Badolato?

9          DEFENDANT BADOLATO:  No, your Honor.

10          THE COURT:  Mr. Kolfage, now that you've been advised

11   of the charges against you, the possible penalties you face,

12   and the rights that you're giving up, is it still your

13   intention to plead guilty to Count One of the indictment in

14   Docket 20 CR 412, conspiracy to commit wire fraud, and Counts

15   One, Two, and Three of the superseding indictment in Docket 22

16   CR 201, making false statements on a tax return and wire fraud?

17          DEFENDANT KOLFAGE:  Yes, your Honor.

18          THE COURT:  So, with respect to Count One of the

19   indictment in Docket 20 CR 412, how do you plead?

20          DEFENDANT KOLFAGE:  Guilty, your Honor.

21          THE COURT:  With respect to Counts One, Two, and Three

22   of the superseding indictment in Docket 22 CR 201, how do you

23   plead?

24          DEFENDANT KOLFAGE:  Guilty.

25          THE COURT:  Now, tell me, in your own words, what you

M4LKKOLP

1    did that makes you believe that you are guilty of the charges

2    in the indictments.

3            MR. DE CASTRO:  Your Honor, this is Cesar de Castro.

4    As I think the Court is aware, Mr. Kolfage and I and

5    Mr. DeStefano worked on a statement from which he's going to

6    read.

7            THE COURT:  That's fine.

8            DEFENDANT KOLFAGE:  Okay.

9            With respect to Count One of the Southern District of

10   New York indictment, in December of 2018, I created a

11   fundraising campaign on Go Fund Me called "We, the People,

12   Build a Wall."  When I launched the campaign, my sole intent

13   was to raise funds and to donate all of those funds to the

14   federal government to be used exclusively to build a wall at

15   the southern border of the United States.

16           I represented in the Go Fund Me campaign that all

17   monies would go to building the wall.  Within a week, the

18   campaign had received approximately 17 million in donations.

19   Its early success drew an interest of prominent, political, and

20   businesspeople.  However, it soon became apparent that we would

21   not be able to make the donation to the government as intended

22   earmarked exclusively for a southern border wall.  The entire

23   campaign leadership team, along with counsel and Go Fund Me,

24   accomplished a shift from the original purpose of a passthrough

25   for donations to a Section 501(c)(4) organization, called "We

M4LKKOLP

1    Build the Wall, Inc.," that would undertake, among other

2    things, to construct the wall privately.

3          Together with such people, I continued to raise funds

4    and promised that I will take no salary and will not take a

5    penny of compensation from their donations.  In doing so, we

6    induced initial donors to opt into the project to be -- to opt

7    into the new project, in part, through the misrepresentation

8    that I would not profit from We Build the Wall, Inc., or take

9    salary or compensation.

10         With the vast majority of donors opting in, We Build

11   the Wall, Inc., did, in fact, construct a southern border wall

12   in the southern part of New Mexico.  Despite our promises

13   together with others, I knowingly and willfully conspired to

14   unlawfully receive money from the donations.  As part of the

15   campaign, I used the internet and telephones to solicit

16   donations.  I understand donations were received from within

17   the Southern District of New York.  I knew what I was doing was

18   wrong and a crime.

19         With respect to the Florida superseding indictment, in

20   2020, in the Northern District of Florida, I knowingly

21   prepared, signed, and filed my 2019 personal income tax return,

22   and later an amended 2019 tax return, under penalty of perjury

23   that materially underreported my income, including money that I

24   had received from the donations.  I filed the returns

25   electronically.  I knew what I was doing was wrong and a crime.

M4LKKOLP

1          THE COURT:  Mr. Kolfage, you asked the public to

2   donate money to build the wall; is that right?

3          DEFENDANT KOLFAGE:  Yes, your Honor.

4          THE COURT:  And you promised the public that

5   100 percent of the money would be used for building the wall;

6   is that right?

7          DEFENDANT KOLFAGE:  That's correct.

8          THE COURT:  Despite your promise, you made an

9   agreement with others to keep a large sum of money for

10   yourself; is that right?

11          DEFENDANT KOLFAGE:  That is correct.

12          THE COURT:  Then, after keeping that large sum of

13   money for yourself, you did not tell the IRS that you received

14   the money; is that right?

15          DEFENDANT KOLFAGE:  That is correct.

16          THE COURT:  And you did that to avoid paying taxes; is

17   that right?

18          DEFENDANT KOLFAGE:  That is correct.

19          THE COURT:  When you did these things, you knew that

20   what you were doing was wrong and illegal?

21          DEFENDANT KOLFAGE:  That is correct.

22          THE COURT:  Mr. Roos, are there any additional

23   questions that you would like me to pose to Mr. Kolfage?

24          MR. ROOS:  No, your Honor.

25          THE COURT:  Mr. Roos, would you summarize what the

M4LKKOLP

1    government's evidence would be if Mr. Kolfage were to go to

2    trial?

3          MR. ROOS:  Certainly.

4          So, the government's proof would include bank records

5    and other financial transfer records related to both the

6    donations and the transfer of funds, directly or indirectly, to

7    Mr. Kolfage's bank accounts.  The government's proof at trial

8    would include the public representations in the form of social

9    media posts, news articles, and other statements on television.

10   The government's evidence would include emails and text

11   messages obtained pursuant to search warrants executed on both

12   email and iCloud accounts, and also on cell phones and other

13   electronic devices.  And, finally, the government's proof would

14   also include statements of witnesses, including donors.

15         THE COURT:  Do both Mr. De Castro and the government

16   agree that there is a sufficient factual predicate for a guilty

17   plea?

18         MR. DE CASTRO:  I do, your Honor.  This is

19   Mr. De Castro.

20         MR. ROOS:  Your Honor, there is just one matter on

21   this plea that I want to raise, which is that on April 11th,

22   2022, Mr. Kolfage was quoted in an article stating that --

23   stating — this is, I think, the text of the article — they

24   Michael Flynned me.  I don't completely understand what that

25   means, but given that I think Mr. Flynn's reported accusation

M4LKKOLP

1    was that there was a conflict of interest, I just want to be

2    sure that it's clear that he's pleading guilty and voluntarily

3    and not for some other reason.

4               THE COURT:  Well, I have asked him those questions.

5               Having heard what Mr. Roos just said, Mr. Kolfage, are

6    you pleading guilty voluntarily?

7               DEFENDANT KOLFAGE:  Yes, your Honor.

8               THE COURT:  And knowingly?

9               DEFENDANT KOLFAGE:  Yes, your Honor.

10              THE COURT:  And you're pleading guilty because you're

11   guilty?

12              DEFENDANT KOLFAGE:  Yes, your Honor.

13              THE COURT:  So, Mr. Roos, you have not answered my

14   question with regard to whether there's a sufficient factual

15   predicate.

16              MR. ROOS:  Yes, your Honor.  Thank you for asking

17   those follow-up questions, and I agree that there is more than

18   sufficient factual predicate for these pleas.

19              THE COURT:  Mr. De Castro, do you know of any valid

20   defense that would prevail at trial?

21              MR. DE CASTRO:  No, your Honor.

22              THE COURT:  Do Mr. De Castro or the government know of

23   any reason that I should not accept Mr. Kolfage's plea of

24   guilty?

25              MR. DE CASTRO:  No reason, Judge.

M4LKKOLP

1          MR. ROOS:  No, your Honor.

2          THE COURT:  All right.  Mr. Kolfage, because you

3  acknowledge that you are, in fact, guilty as charged in the

4  indictment in Docket 20 CR 412, and the superseding indictment

5  in Docket 22 CR 201, because I'm satisfied that you know of

6  your rights, including your right to go to trial, and that

7  you're aware of the consequences of your plea, including the

8  sentence which may be imposed, because I find that you're

9  knowingly and voluntarily pleading guilty, I accept your guilty

10  plea and enter a judgment of guilty on Count One of the

11  indictment in Docket 20 CR 412 and Counts One, Two, and Three

12  of the superseding indictment in Docket 22 CR 201.

13          Mr. Badolato, now that you've been advised of the

14  charges against you, the possible penalties you face, and the

15  rights that you're giving up, is it still your intention to

16  plead guilty to Count One of the indictment in Docket 20 CR

17  412, conspiracy to commit wire fraud?

18          DEFENDANT BADOLATO:  Yes, I do, your Honor.

19          THE COURT:  So, with respect to Count One of the

20  indictment in Docket 20 CR 412, how do you plead?

21          DEFENDANT BADOLATO:  Guilty.

22          THE COURT:  Now, tell me, in your own words, what you

23  did that makes you believe that you're guilty of the charge in

24  the indictment.

25          DEFENDANT BADOLATO:  Yes, your Honor.

M4LKKOLP

1          From December -- approximately December 2018 to

2     August 2020, I worked with the organization We Build the Wall.

3     We Build the Wall solicited donations from the public to build

4     a wall on private land along the southern border of the United

5     States.  To raise funds for We Build the Wall, the organization

6     issued statements assuring prospective donors that 100 percent

7     of the money they collected would be used exclusively to

8     support the stated mission and purpose of the organization.

9          I, together with others, mutually decided to falsely

10    claim that Mr. Kolfage, president of We Build the Wall, would

11    not receive any compensation from We Build the Wall funds.  We

12    communicated this to the public via the internet, the media,

13    and various public speeches.  The purpose of these false

14    representations that we made was to bolster the reputation of

15    We Build the Wall and, in turn, generate more donations, which

16    was received by electronic transfer and mail.

17         I knew the statements indicating that Brian was not

18    being compensated was false.  I was also aware that always it

19    was the organization's intention to compensate Mr. Kolfage

20    despite the representations we made to the contrary.

21         I knew this was wrong, and I'm terribly, terribly

22    sorry for what I did, and I humbly respectfully beg the Court

23    for mercy.

24         THE COURT:  So you were aware that the public was told

25    that the funds were to be used to build the wall?

M4LKKOLP

1          DEFENDANT BADOLATO:  Yes.

2          THE COURT:  But you knew that Mr. Kolfage was going to

3    get money from the We Build the Wall donations?

4          DEFENDANT BADOLATO:  Yes, I did, and I helped

5    facilitate it.

6          THE COURT:  But you're not saying that you knew that

7    you were also going to get money from these funds?

8          DEFENDANT BADOLATO:  Yes, I did know.

9          THE COURT:  Are you saying that you knew that you

10   would be getting money from these funds?

11         DEFENDANT BADOLATO:  I was paid by We Build the Wall.

12         THE COURT:  That's not my question.

13         You understood that the public was told that the funds

14   were to be used 100 percent to build the wall; isn't that so?

15         DEFENDANT BADOLATO:  Yes.

16         THE COURT:  But despite that, you knew that you were

17   going to get a portion of the money; isn't that true?

18         DEFENDANT BADOLATO:  Yes.

19         THE COURT:  When you did this, did you know that what

20   you were doing was wrong and illegal?

21         DEFENDANT BADOLATO:  Yes.

22         THE COURT:  Mr. Roos, are there any additional

23   questions that you would like me to pose to Mr. Badolato?

24         MR. ROOS:  Just on the question of venue, your Honor,

25   I don't think Mr. Badolato's allocution said something about

M4LKKOLP

1    the Southern District of New York.  I can proffer, and I think

2    Mr. Badolato would agree, that there are donors in the Southern

3    District of New York or else he could waive venue.

4             THE COURT:  You were aware that there were donors in

5    the Southern District of New York, Mr. Badolato?

6             DEFENDANT BADOLATO:  Yes, I was aware, your Honor.

7             THE COURT:  Mr. Roos, would you summarize what the

8    government's evidence would be if Mr. Badolato were to go to

9    trial?

10            MR. ROOS:  Yes, your Honor.

11            It would be substantially the same evidence as I

12   described for Mr. Kolfage, which I'll just note again briefly.

13            So, financial transaction records, both showing

14   donations to We Build the Wall and the movement of funds out of

15   We Build the Wall, including to the defendant's bank accounts,

16   call records, emails, and text messages, like the ones I

17   described previously that were obtained pursuant to search

18   warrants on email, iCloud, and electronic device accounts,

19   public statements of -- Mr. Badolato did not make public

20   statements himself, I don't believe, so the public statements

21   of his alleged coconspirators, and then, again, witness

22   testimony, including testimony of donors.

23            THE COURT:  Mr. Heffernan and Mr. Roos, do you both

24   agree that there is a sufficient factual predicate for a guilty

25   plea?

M4LKKOLP

1             MR. ROOS:  Yes, your Honor.

2             THE COURT:  Mr. Heffernan?

3             MR. HEFFERNAN:  Yes, your Honor.

4             THE COURT:  Mr. Heffernan, do you know of any valid

5    defense that would prevail at trial?

6             MR. HEFFERNAN:  No, your Honor.

7             THE COURT:  Is there any reason that I should not

8    accept Mr. Badolato's plea of guilty?

9             Mr. Heffernan?

10            MR. HEFFERNAN:  No, your Honor.

11            THE COURT:  Mr. Roos?

12            MR. ROOS:  No, your Honor.

13            THE COURT:  All right.  Mr. Badolato, because you

14   acknowledge that you are, in fact, guilty as charged in the

15   indictment in Docket 20 CR 412, because I'm satisfied that you

16   know of your rights, including your right to go to trial, and

17   that you're aware of the consequences of your plea, including

18   the sentence which may be imposed, and because I find that

19   you're knowingly and voluntarily pleading guilty, I accept your

20   guilty plea and enter a judgment of guilty on Count One of the

21   indictment in Docket 20 CR 412.

22            The probation department will want to interview both

23   of you in connection with a presentence report that it will

24   prepare.

25            Does defense counsel wish to be present for any

M4LKKOLP

1    interview in connection with the report?

2              Mr. De Castro?

3              MR. DE CASTRO:  Yes, your Honor.

4              THE COURT:  And Mr. Heffernan?

5              MR. HEFFERNAN:  Yes, your Honor.

6              THE COURT:  All right.  So I direct that there shall

7    not be an interview of either defendant unless counsel is

8    present.

9              Mr. Kolfage and Mr. Badolato, if you choose to speak

10   to the probation department, make sure that anything that you

11   say is accurate and complete.  I will read the reports

12   carefully.  They are important to me in deciding what sentence

13   to impose.  You and your attorney have the right to examine the

14   report and to comment on it at the time of sentencing.  I urge

15   that you both read the reports and discuss them with your

16   attorneys.  If there are any mistakes, point them out to your

17   lawyers so that they can bring them up with me.

18             Sentencing for both defendants is set for

19   September 6th, 2022, at 1:00 p.m., in New York City.

20             The government shall provide the probation officer

21   with its factual statement within seven days.  Defense counsel

22   must arrange for the defendants to be interviewed by the

23   probation department within the next two weeks.

24             Defendants' submissions are due two weeks prior to

25   sentencing, and the government's submissions are due one week

M4LKKOLP

1    prior to sentencing.

2                 I understand that both defendants are currently out on

3    bail.

4                 Is there any objection to continuing the present bail

5    conditions?

6                 MR. ROOS:  No, your Honor.

7                 THE COURT:  I find, by clear and convincing evidence,

8    that Mr. Kolfage and Mr. Badolato are not likely to flee or

9    pose a danger to the safety of any other person or the

10   community if bail is continued.

11                Mr. Kolfage and Mr. Badolato, all the conditions on

12   which you were released still apply.  Violation of those

13   conditions can have serious consequences, including revocation

14   of bail and prosecution for bail-jumping.

15                Do you understand?

16                Mr. Kolfage?

17                DEFENDANT KOLFAGE:  Yes, your Honor.

18                THE COURT:  Mr. Badolato?

19                DEFENDANT BADOLATO:  Yes, your Honor.

20                THE COURT:  In particular, you must be personally

21   present in court for sentencing at the time and date set or you

22   will be guilty of a separate crime, the crime of bail-jumping,

23   and subject to an additional fine or prison sentence in

24   addition to whatever sentence you may receive for the crime to

25   which you have just pleaded guilty.

M4LKKOLP

1              Do you understand?

2              Mr. Kolfage?

3              DEFENDANT KOLFAGE:  Yes, your Honor.

4              THE COURT:  Mr. Badolato?

5              DEFENDANT BADOLATO:  Yes, your Honor.

6              THE COURT:  Are there any further applications?

7              MR. DE CASTRO:  Not from the defense, your Honor.

8              MR. ROOS:  Not from the government, your Honor.

9              MR. HEFFERNAN:  Not for Mr. Badolato's defense, your

10   Honor.

11             THE COURT:  All right.

12             That brings our hearing to a close.  I wish all of you

13   good health.  Thank you.

14             DEFENDANT KOLFAGE:  Thank you.

15                              *  *  *

16

17

18

19

20

21

22

23

24

25